# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

BRYAN E. RANSOM,

                Plaintiff,

     vs.

RODOLFO AGUIRRE, et al.,

                Defendants.

) 1:12cv01343 AWI DLB PC
)
)
) ORDER REQUIRING PLAINTIFF TO
) EITHER FILE AMENDED COMPLAINT OR
) NOTIFY COURT OF WILLINGNESS TO
) PROCEED ONLY ON COGNIZABLE
) CLAIMS
)
) THIRTY-DAY DEADLINE
)

Plaintiff Bryan E. Ransom ("Plaintiff") is a prisoner proceeding pro se in this civil rights action.  Plaintiff originally filed his action in the Kings County Superior Court on June 26, 2012.  Defendants paid the filing fee and removed the action on August 16, 2012.[1]  Plaintiff names the following Defendants: Correctional Sergeants R. Vogel and Perez, Correctional Officers Mariscal, Cortez, M. Singh, R. Martines, D. Vellejo, R. Aguirre, B. Wooden, Alanis and Mussick, doctors Ulit, Wang, Moon and Clark, CDCR undersecretary S. Kernan, and numerous John Does.  Plaintiff's complaint is now before the Court for screening.

---

[1]  Pursuant to Court Order dated June 9, 2010, Plaintiff was deemed to be a prisoner with three strikes or more and therefore unable to proceed in forma pauperis.  28 U.S.C. § 1915(g).  However, Defendants paid the filing fee upon removal and Plaintiff's status is not relevant to this action.

## A.   <u>LEGAL STANDARD</u>

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  <u>Id</u>. (quoting <u>Twombly</u>, 550 U.S. at 555).  While factual allegations are accepted as true, legal conclusions are not.  <u>Id</u>.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law.  <u>Nurre v. Whitehead</u>, 580 F.3d 1087, 1092 (9th Cir 2009); <u>Long v. County of Los Angeles</u>, 442 F.3d 1178, 1185 (9th Cir. 2006); <u>Jones v. Williams</u>, 297 F.3d 930, 934 (9th Cir. 2002).  Plaintiff's allegations must link the actions or omissions of each named defendant to a violation of his rights; there is no respondeat superior liability under section 1983.  <u>Iqbal</u>, 556 U.S. at 676-77; <u>Simmons v. Navajo County, Ariz.</u>, 609 F.3d 1011, 1020-21 (9th Cir. 2010); <u>Ewing v. City of Stockton</u>, 588 F.3d 1218, 1235

(9th Cir. 2009); <u>Jones</u>, 297 F.3d at 934.  Plaintiff must present factual allegations sufficient to state a plausible claim for relief.  <u>Iqbal</u>, 556 U.S. at 678-79; <u>Moss v. U.S. Secret Service</u>, 572 F.3d 962, 969 (9th Cir. 2009).  The mere possibility of misconduct falls short of meeting this plausibility standard.  <u>Iqbal</u>, 556 U.S. at 678; <u>Moss</u>, 572 F.3d at 969.

**B.      SUMMARY OF PLAINTIFF'S ALLEGATIONS**

Plaintiff is confined in the Secured Housing Unit ("SHU") at Corcoran State Prison, where the events at issue in this action occurred.

Plaintiff contends that on July 1, 2011, he notified Defendants Vogel, Perez, Marsical, Cortez, Martines, Vellejo, Singh, Aguirre, Wooden and medical staff John Does 1-10, that he was a participant in a statewide indefinite prisoner solid-food hunger strike.  The hunger strike was launched in response to the conditions in SHUs throughout CDCR.

Plaintiff alleges that in retaliation for his hunger strike, which he contends did not violate any rules, Defendants Vogel, Perez, Marsical, Cortez, Martines, Vellejo, Singh, Aguirre, Wooden and John Does 11-20, implemented and/or enforced a policy and practice that prohibited inmates who were on any type of hunger strike from receiving their daily state issue bag lunches and meal trays.  This policy deprived Plaintiff of his daily state issue of "non-solid" food items for nineteen consecutive days.[2]  Plaintiff alleges that under 15 Cal. Code Regs. § 3050(a)(1), Defendants had a responsibility to give him his daily state issue of non-solid food items.  He further alleges that to cover up their deprivation, Defendants placed false entries in the daily activity log indicating that Plaintiff had refused his meals and/or tray.

On July 15, 2011, Plaintiff told medical staff John Does 1-10 that prison officials were withholding his daily state issue of non-solid food items, which was causing him great pain and extreme weight loss.  Defendant John Doe 1 stated that this was a custody issue, and that medical staff would not intervene until Plaintiff passed out from starvation and/or dehydration.  Plaintiff

---

[2] Plaintiff states that Defendants Martines and Wooden gave him a half pint of milk on July 10 and July 11, 2010.

contends that pursuant to 15 Cal.Code Regs. § 3350(a), John Does 1-10 had a responsibility to intervene in the deprivation.

On July 19, 2011, Plaintiff "fell out" and was taken to Corcoran's emergency room. Plaintiff told Defendant Dr. Ulit that he was on his nineteenth day of an indefinite hunger strike of all solid foods, and that for the last nineteen days, prison officials had been withholding his daily state issue of non-solid food items.  Defendant Ulit found Plaintiff to be dehydrated and malnourished and admitted him to Corcoran's hospital for observation and treatment.  He ordered that Plaintiff be intravenously rehydrated and placed on a 1,125 calorie liquid diet. Defendant Ulit explained the dangers and medical protocol of the liquid diet, and told Plaintiff that the caloric intake would gradually increase to 2,000 to 2,500 calories per day over a period of five to seven days.  He contends that Defendant Ulit failed to follow up on Plaintiff's medical treatment and in retaliation for Plaintiff exercising his right not to eat solid food, Defendants Wang, Moon, Clark and medical staff John Does 21-30 refused to increase his caloric intake to 2,000 to 2,500 calories per day.

On August 1, 2011, Defendant Clark told Plaintiff that his medical treatment was too expensive, set a bad precedent and was no longer in the political interest of CDCR.  Defendant Clark and medical staff John Does 21-30 discontinued Plaintiff's liquid diet of 1,125 calories and discharged him from the hospital.  Plaintiff contends that pursuant to 15 Cal. Code Regs. § 3350(a), Defendants Ulit, Wang, Moon, Clark and medical staff John Does 21-30 had a responsibility to gradually increase and maintain his liquid diet and retain him in the Corcoran hospital.

On August 5, 2011, Plaintiff temporarily discontinued his hunger strike as a good faith gesture to the administration's proposed resolutions to the conditions of the SHU.  On September 21, 2011, communications broke down and Defendant Kernan issued a memorandum indicating

4

that further participation in the hunger strike would result in disciplinary actions against the participating prisoners.

On October 2, 2011, Plaintiff placed Defendants Alanis, Mussick and John Does 31-40 on notice that he was resuming his indefinite hunger strike of all solid foods.  He contends that in retaliation, Defendants Alanis, Mussick and John Does 31-40 withheld Plaintiff's daily state issue of non-solid food items for thirteen days.  Plaintiff contends that pursuant to 15 Cal. Code Regs. § 3050(a)(2), Defendants had a responsibility to give him his daily state issue of non-solid food items.  To cover their deprivation, Plaintiff alleges that Defendants Alanis, Mussick and John Does 31-40 indicated in the activity log that Plaintiff refused his meals.

Between July 1 and July 6, 2011, Plaintiff wrote three press releases placing the media on notice of the hunger strike.  He gave one press release, in a prepaid self-addressed envelope, to Defendant Aguirre for mailing, and two press releases to Defendant Wooden for mailing. Plaintiff alleges that in retaliation, Defendants Aguirre, Wooden and John Does 41-50 withheld the press releases and did not mail them to the media.  He contends that pursuant to 15 Cal. Code Regs., § 3130, Defendants Aguirre, Wooden and John Does 31-40 had a responsibility to mail the press releases.

Based on these allegations, Plaintiff alleges the following causes of action:

1.      Retaliation in violation of the First Amendment against Defendants Vogel, Perez, Marsical, Cortez, Martines, Vellejo, Singh, Aguirre, Wooden, Alanis, Mussick and John Does 11-20 and 31-40;

2.      Withholding food in violation of the Eighth Amendment against Defendants Vogel, Perez, Marsical, Cortez, Martines, Vellejo, Singh, Aguirre, Wooden, Alanis, Mussick, and John Does 11-20 and 31-40;[3]

---

[3] In the Claims for Relief section, the First and Eighth Amendment claims relating to the alleged withholding of food also include a Defendant named either "Hang" or "Heing."  However, there are no factual allegations against such a Defendant, and this Defendant included in the caption.

3.     Failure to provide medical treatment in violation of the Eighth Amendment against Defendants Ulit, Wang, Moon, Clark and John Does 1-10 and 21-30;

4.     Retaliation in violation of the First Amendment against Defendants Wang, Moon, Clark and John Does 21-30;

5.     Retaliation in violation of the First Amendment against Defendant Kernan;

6.     Retaliation in violation of the First Amendment against Defendants Aguirre, Wooden and John Does 41-50;

7.     Censorship in violation of the First Amendment against Defendants Aguirre, Wooden and John Does 41-50;

8.     Negligence against Defendants Vogel, Perez, Marsical, Cortez, Martines, Vellejo, Singh, Aguirre, Wooden, Alanis, Mussick and John Does 11-20 and 31-40;

9.     Medical negligence against John Does 1-10;

10.     Medical malpractice against Defendants Ulit, Wang, Moon, Clark and John Does 21-30; and

11.     Negligence against Defendants Aguirre, Wooden and John Does 41-50.

## C.   <u>ANALYSIS</u>

1.     *Retaliation Claims*

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. <u>Rizzo v. Dawson</u>, 778 F.2d 527, 532 (9th Cir. 1985); <u>see also</u> <u>Valandingham v. Bojorquez</u>, 866 F.2d 1135 (9th Cir. 1989); <u>Pratt v. Rowland</u>, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-

68 (9th Cir. 2005); accord <u>Watison v. Carter</u>, 668 F.3d 1108, 1114-15 (9th Cir. 2012); <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009).

        a.     <u>Defendants Vogel, Perez, Marsical, Cortez, Martines, Vellejo, Singh, Aguirre, Wooden, Alanis, Mussick, Wang and John Does 11-20 and 31-40</u>

      Plaintiff's allegations of retaliation against Defendants Vogel, Perez, Marsical, Cortez, Martines, Vellejo, Singh, Aguirre, Wooden and John Does 11-20 are based on their alleged withholding of Plaintiff's daily state issue of non-solid food items for nineteen days in July 2011. His allegations against Alanis, Mussick and John Does 31-40 are based on their withholding of Plaintiff's daily state issue of non-solid food items for thirteen days in October 2011.[4]  He contends that these Defendants withheld food in retaliation for Plaintiff's exercising of his right to not eat solid foods, and that it had a chilling effect.

      Viewed liberally, the Court finds that Plaintiff has stated a cognizable claim for relief against Defendants Vogel, Perez, Marsical, Cortez, Martines, Vellejo, Singh, Aguirre, Wooden, Alanis, Mussick and John Does 11-20 and John Does 31-40 based on their withholding of non-solid food for extended periods of time.

        b.     <u>Defendants Wang, Moon, Clark and John Does 21-30</u>

      Plaintiff's allegations of retaliation against Defendants Wang, Moon, Clark and John Does 21-30 are based on his contention that they refused to increase his liquid diet from 1,125 calories to 2,000-2,500 calories.

      Not every allegedly adverse action will be sufficient to support a claim under section 1983 for retaliation.  In the prison context, cases in this Circuit addressing First Amendment

---

[4]  Plaintiff describes the policy that led to the withholding as prohibiting inmates on any type of hunger strike from "receiving their daily state issue bag lunches and meal trays."  Complaint, at 5-6.  This, of course, implies a total withholding of food.  In contrast, Plaintiff describes the withholding of *his* food as "his daily state issue of 'non-solid' food items."  Complaint, at 6.  Arguably, there is a difference between not being offered *any* food and being offered solid food which an inmate has chosen not to eat.  However, because Plaintiff uses both descriptions, the Court reads the complaint liberally and bases this ruling on the withholding of bag lunches and meal trays.

retaliation claims involve situations where action taken by the defendant was clearly adverse to the plaintiff. Rhodes, 408 F.3d at 568 (arbitrary confiscation and destruction of property, initiation of a prison transfer, and assault in retaliation for filing grievances); Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir.2003) (retaliatory validation as a gang member for filing grievances); Hines v. Gomez, 108 F.3d 265, 267(9th Cir.1997) (retaliatory issuance of false rules violation and subsequent finding of guilt); Pratt, 65 F.3d at 806 (retaliatory prison transfer and double-cell status); Valandingham, 866 F.2d at 1138 (inmate labeled a snitch and approached by other inmates and threatened with harm as a result); Rizzo, 778 F.2d at 530–32 (retaliatory reassignment out of vocational class and transfer to a different prison).

Here, Plaintiff's allegation that Defendants refused to increase his caloric intake from 1,125 calories to 2,000-2,500 is not a sufficient adverse action to support a retaliation claim.

Moreover, as to Defendants Wang and Moon, Plaintiff fails to assert any factual allegations against them. Under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Rule 8 also requires a plaintiff to specify what each defendant did or did not do that led to the violation of Plaintiff's rights. Although Plaintiff includes Defendants Wang and Moon in his assertion that his rights were violated, legal conclusions are not sufficient. Iqbal, 129 S. Ct. at 1949 (citations omitted).

Plaintiff therefore fails to state a First Amendment retaliation claim against Wang, Moon, Clark and John Does 21-30.

c.    Defendant Kernan

Plaintiff's First Amendment Claim against Defendant Kernan is based on his threat of "disciplinary action" against prisoners who participated in the hunger strike. The Court finds that, viewed liberally, this states a First Amendment retaliation Claim against Defendant Kernan.

        d.     <u>Defendants Aguirre, Wooden and John Does 41-50</u>

Plaintiff's allegations against Defendants Aguirre, Wooden and John Does 41-50 are based on his contention that they withheld Plaintiff's press releases.  However, as explained above, not every action is sufficiently adverse to state a claim for retaliation.  The Court finds that the withholding of press releases is not an adverse action to support a retaliation claim and Plaintiff therefore fails to state a First Amendment retaliation claim against Defendants Aguirre, Wooden and John Does 41-50.

       2.     *Eighth Amendment- Conditions of Confinement*

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement.  <u>Morgan v. Morgensen</u>, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 847 (1994) and <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981)) (quotation marks omitted).  While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain.  <u>Morgan</u>, 465 F.3d at 1045 (citing <u>Rhodes</u>, 452 U.S. at 347) (quotation marks omitted).  Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment.  <u>Morgan</u>, 465 F.3d at 1045 (quotation marks and citations omitted); <u>Hope v. Pelzer</u>, 536 U.S. 730, 737 (2002); <u>Rhodes</u>, 452 U.S. at 346.

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, <u>Johnson v. Lewis</u>, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, <u>Morgan</u>, 465 F.3d at 1045 (quotation marks omitted).  To succeed on an Eighth Amendment conditions of confinement claim, a prisoner must show that (1) the defendant prison official's conduct deprived him or her of the minimal

civilized measure of life's necessities and (2) that the defendant acted with deliberate indifference to the prisoner's health or safety.  <u>Farmer</u>, 511 U.S. at 834.  Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.  <u>Hudson</u>, 503 U.S.at 9.

The Court finds that Plaintiff has stated a claim against Defendants Vogel, Perez, Marsical, Cortez, Martines, Vellejo, Singh, Aguirre, Wooden, Alanis, Mussick, and John Does 11-20 and 31-40 for violation of the Eighth Amendment based on their withholding of non-solid food for extended periods of time.

3.    *Eighth Amendment- Medical Care*

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must show deliberate indifference to his serious medical needs.  <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing <u>Estelle v. Gamble</u>, 429 U.S. 97, 106, 97 S.Ct. 295 (1976)) (quotation marks omitted).  The two-part test for deliberate indifference requires the plaintiff to show (1) a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain, and (2) the defendant's response to the need was deliberately indifferent.  <u>Jett</u>, 439 F.3d at 1096 (quotation marks and citation omitted).

Deliberate indifference is shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference.  <u>Id.</u> (citation and quotation marks omitted).  Deliberate indifference may be manifested when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.  <u>Id.</u> (citation and quotations omitted).  Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs.  <u>Berry v.</u>

<u>Bunnell</u>, 39 F.3d 1056, 1057 (9th Cir. 1994); <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled on other grounds, <u>WMX Techs., Inc. v. Miller</u>, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

Plaintiff alleges that Defendants Ulit, Wang, Moon, Clark and John Does 1-10 and 21-30 violated the Eighth Amendment by refusing to increase his liquid diet, discontinuing his liquid diet and discharging him from the hospital.  According to his complaint, Plaintiff was discharged after sixteen days in the hospital.  During his hospitalization, he received a 1,125-calorie liquid diet.

Based on these facts, there is no indication that Defendants Ulit, Wang, Moon, Clark and John Does 1-10 and 21-30 were deliberately indifferent to a serious medical need.  While Plaintiff may have wanted to stay in the hospital and/or receive a higher caloric intake, his disagreement with treatment does not rise to the level of an Eighth Amendment violation.  "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a [section] 1983 claim."  <u>Franklin v. Oregon</u>, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted).

Plaintiff has also failed to assert any factual allegations against Defendants Wang and Moon, in violation of the pleading standards discussed above.  Again, including Defendants Wang and Moon in his assertion that his rights were violate is an insufficient legal conclusion. <u>Iqbal</u>, 129 S. Ct. at 1949 (citations omitted).

Plaintiff has therefore failed to state an Eighth Amendment medical claim against Defendants Ulit, Wang, Moon, Clark and John Does 1-10 and 21-30.

4.     *First Amendment- Censorship*

Prisoners have "a First Amendment right to send and receive mail."  <u>Witherow v. Paff</u>, 52 F.3d 264, 265 (9th Cir. 1995).  Censorship of outgoing prisoner mail is justified if the following criteria are met: (1) the regulation furthers "an important or substantial government interest

unrelated to the suppression of expression" and (2) "the limitation on First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved." <u>Procunier v. Martinez</u>, 416 U.S. 396, 413 (1974) (overturned by <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 413-14 (1989) only as test relates to incoming mail - <u>Turner</u> test applies to incoming mail).

Here, Plaintiff alleges that Defendants Aguirre, Wooden and John Does 41-50 violated his First Amendment rights by withholding his three press releases intended for three television stations.  He contends that he gave the press releases to Defendants Aguirre and Wooden, but they did not mail them.

Plaintiff's allegations against Defendants Aguirre and Wooden are sufficient to state a cognizable claim for impermissibly infringing on Plaintiff's First Amendment right to send mail.

However, with respect to John Does 41-50, Plaintiff fails to assert any factual allegations against them.  Including John Does 41-50 in his assertion that his rights were violate is an insufficient legal conclusion.  <u>Iqbal</u>, 129 S. Ct. at 1949 (citations omitted).

     5.    *Negligence*

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c).  "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary."  <u>Acri v. Varian Assoc., Inc.</u>, 114 F.3d 999, 1000 (9th Cir.1997).

    *"*Under California law, '[t]he elements of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of duty); (3) a reasonably close connection

between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages).'" Corales v. Bennett, 567 F.3d 554, 572 (9th Cir. 2009) (quoting McGarry v. Sax, 158 Cal.App.4th 983, 994, 70 Cal.Rptr.3d 519 (2008) (internal quotations omitted)).

a.      Defendants Vogel, Perez, Marsical, Cortez, Martines, Vellejo, Singh, Aguirre, Wooden, Alanis, Mussick and John Does 11-20 and 31-40

Plaintiff's negligence claim against Defendants Vogel, Perez, Marsical, Cortez, Martines, Vellejo, Singh, Aguirre, Wooden, Alanis, Mussick and John Does 11-20 and 31-40 is based on their withholding of non-solid food for extended periods of time.  He has alleged sufficient facts to state a negligence claim against Defendants Vogel, Perez, Marsical, Cortez, Martines, Vellejo, Singh, Aguirre, Wooden, Alanis, Mussick and John Does 11-20 and 31-40.[5]

b.      Defendants Aguirre, Wooden and John Does 41-50

Plaintiff's negligence claim against these Defendants is based on allegations that they refused to mail his press releases.  Assuming there is an arguable duty to allow access to the mail and given Plaintiff's allegation that their acts were a proximate cause of his injuries, Plaintiff has stated a negligence claim against Defendants Aguirre and Wooden.

His claim fails against John Does 41-50, however, because he has failed to assert any factual allegations against them. Iqbal, 129 S. Ct. at 1949 (citations omitted).

6.      *Medical Negligence*

Prison personnel have a statutory duty to summon medical care, and they may be held liable if they know or have reason to know that a prisoner is in need of immediate medical care, but they fail to take reasonable action to summon such care.  Cal. Gov't Code § 845.6 (West 2011); Lucas v. County of Los Angeles, 47 Cal.App.4th 277, 288 (1996); Watson v. State, 21 Cal.App.4th 836, 841 (1993); Zeilman v. County of Kern, 168  Cal.App.3d 1174, 1185-86 (1985).

---

[5]  Plaintiff has alleged compliance with the California Tort Claim Act.

To state a claim for violation of section 845.6, the plaintiff "must establish three elements: (1) the public employee knew or had reason to know of the need (2) for immediate medical care, and (3) failed to reasonably summons such care." Jett v. Penner, 439 F.3d 1091, 1099 (9th Cir. 2006). "Liability . . . is limited to serious and obvious medical conditions requiring immediate care," Watson, 21 Cal.App.4th at 841 (citations omitted), and the "section does not impose a duty to monitor the quality of care provided," Jett, 439 F.3d at 1099 (emphasis added).

Plaintiff alleges medical negligence against John Does 1-10 based on their alleged failure to intervene in the deprivation of his daily state issue of non-solid food items. He alleges that on July 15, 2011, he told John Does 1-10 that he was on a solid food hunger strike and that prison officials were withholding non-solid food items, causing Plaintiff great pain and extreme weight loss. He states that Defendant John Doe 1 told him that this was a custody issue and that medical staff could not intervene until "Plaintiff actually passed out from starvation and/or dehydration." Complaint, at 8.

Plaintiff therefore alleges that Defendant John Does 1-10 should have intervened and ordered prison officials to provide food. He does not allege that John Does 1-10 should have provided him with medical treatment, which is the basis for a medical negligence claim. To the extent that he alleges that they should have provided him with "preventative medical care," a claim under section 845.6 requires a need for *immediate* medical care. Complaint, at 21.

Accordingly, Plaintiff has failed to state a claim for medical negligence against John Does 1-10.

7.   *Medical Malpractice*

"The elements of a medical malpractice claim are (1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent

14

conduct and resulting injury; and (4) actual loss or damage resulting from the professional's negligence." Avivi v. Centro Medico Urgente Med. Ctr., 159 Cal.App.4th 463, 468, n.2 (2008) (internal quotations and citation omitted).

Plaintiff's medical malpractice claim against Defendants Ulit, Wang, Moon, Clark and John Does 21-30 is based on his contention that they failed to gradually increase his liquid diet and retain him in the hospital. Construed liberally, Plaintiff alleges a medical malpractice claim against Defendant Ulit, who cared for Plaintiff while he was hospitalized, and Defendants Clark and John Does 21-30, who ultimately discharged him.

However, Plaintiff fails to assert any factual allegations against Defendants Wang and Moon, and therefore fails to state a claim against them. Iqbal, 129 S. Ct. at 1949 (citations omitted).

**D.      CONCLUSION AND ORDER**

Plaintiff's complaint states the following cognizable claims: (1) retaliation in violation of the First Amendment against Defendants Vogel, Perez, Marsical, Cortez, Martines, Vellejo, Singh, Aguirre, Wooden, Alanis, Mussick and John Does 11-20 and 31-40 based on their withholding of food; (2) withholding food in violation of the Eighth Amendment against Defendants Vogel, Perez, Marsical, Cortez, Martines, Vellejo, Singh, Aguirre, Wooden, Alanis, Mussick, and John Does 11-20 and 31-40; (3) retaliation in violation of the First Amendment against Defendant Kernan; (4) censorship in violation of the First Amendment against Defendants Aguirre and Wooden; (5) negligence against Defendants Vogel, Perez, Marsical, Cortez, Martines, Vellejo, Singh, Aguirre, Wooden, Alanis, Mussick and John Does 11-20 and 31-40 based on their withholding of food; (6) medical malpractice against Defendants Ulit, Clark and John Does 21-30; and (7) negligence against Defendants Aguirre and Wooden for withholding press releases.

The following claims are NOT cognizable: (1) failure to provide medical treatment in violation of the Eighth Amendment against Defendants Ulit, Wang, Moon, Clark and John Does 1-10 and 21-30; (2) retaliation in violation of the First Amendment against Defendants Wang, Moon, Clark and John Does 21-30 based on their failure to increase his caloric intake; (3) retaliation in violation of the First Amendment against Defendants Aguirre, Wooden and John Does 41-50 based on their withholding of press releases; (4) censorship in violation of the First Amendment against John Does 41-50; (5) medical negligence against John Does 1-10; (6) medical malpractice against Defendants Wang and Moon; and (7) negligence against John Does 41-50 for withholding press releases.

Plaintiff may either (1) proceed on his cognizable claims, identified above, or (2) file an amended complaint curing the deficiencies identified in this order. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

If Plaintiff files an amended complaint, he may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints). Further, Plaintiff is notified that his amended complaint supersedes the original complaint, Lacey v. Maricopa County, 693 F.3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

If Plaintiff is willing to proceed on his cognizable claims, he may notify the Court in writing. The Court will then dismiss Plaintiff's other claims and Defendants, and provide Plaintiff with further instructions regarding service of a summons and the complaint.[6]

Based on the foregoing, it is HEREBY ORDERED that:

1.      The Clerk's Office shall send Plaintiff a civil rights complaint form;

---

[6]  Plaintiff is reminded that **Error! Main Document Only.**the United States Marshal cannot initiate service of process on unknown defendants. Therefore, the Court will send Plaintiff the appropriate service documents at such time as Plaintiff ascertains the identities of the Doe defendants.

2.      Within thirty (30) days from the date of service of this order, Plaintiff must either:

a.      File an amended complaint curing the deficiencies identified by the Court in this order, or

b.      Notify the Court in writing that he does not wish to file an amended complaint and is willing to proceed only on the cognizable claims identified above.

3.      If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.


IT IS SO ORDERED.

Dated:   **January 30, 2013**                            /s/ *Dennis L. Beck*
                                                          UNITED STATES MAGISTRATE JUDGE