# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYAN E. RANSOM,<br><br>      Plaintiff,<br><br>   vs.<br><br>RODOLFO AGUIRRE, et al.,<br><br>      Defendants. | ) 1:12cv01343 AWI DLB PC<br>)<br>)<br>) FINDINGS AND RECOMMENDATIONS<br>) REGARDING DISMISSAL OF CERTAIN<br>) CLAIMS AND CERTAIN DEFENDANTS<br>)<br>) THIRTY-DAY DEADLINE<br>)<br>) |

Plaintiff Bryan E. Ransom ("Plaintiff") is a prisoner proceeding pro se in this civil rights action. Plaintiff originally filed his action in the Kings County Superior Court on June 26, 2012. Defendants paid the filing fee and removed the action on August 16, 2012.[1] Plaintiff names the following Defendants: Correctional Sergeants R. Vogel, A. Perez, J. Watkins and E. Molina, Correctional Officers Mariscal, Cortez, M. Singh, R. Martines, D. Vellejo, R. Aguirre, B. Wooden, Alanis, Messick, Hieng, D. Lovelady, J. Faldon, G. Torres, Quillen, Hayward, D. Riley and H. Rocha, Doctors Ulit, Hugh, Wang, Moon, Clark, R. Gill and J. Sao, CDCR undersecretary S. Kernan, Wardens S. Hubbard, R. Lopez and C. Gibson, Captain B. Weaver,

---

[1] Pursuant to Court order dated June 9, 2010, Plaintiff was deemed to be a prisoner with three strikes or more and therefore unable to proceed in forma pauperis. 28 U.S.C. § 1915(g). However, Defendants paid the filing fee upon removal and Plaintiff's status is not relevant to this action.

1

CEO Macias, CMO C. McCabe, Nurses D. Strome, Rouch, J. Faldon, R. Herrera, S. Dougherty and J. Kaiser, Dietician M. Brooks, and numerous John Does.

On January 31, 2013, the Court screened the complaint and gave Plaintiff the option of proceeding on the cognizable claims or filing a First Amended Complaint. Plaintiff chose to file a First Amended Complaint on March 6, 2013, and it is now before the Court for screening.

**A.      LEGAL STANDARD**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d

1087, 1092 (9th Cir 2009); <u>Long v. County of Los Angeles</u>, 442 F.3d 1178, 1185 (9th Cir. 2006); <u>Jones v. Williams</u>, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff's allegations must link the actions or omissions of each named defendant to a violation of his rights; there is no respondeat superior liability under section 1983. <u>Iqbal</u>, 556 U.S. at 676-77; <u>Simmons v. Navajo County, Ariz.</u>, 609 F.3d 1011, 1020-21 (9th Cir. 2010); <u>Ewing v. City of Stockton</u>, 588 F.3d 1218, 1235 (9th Cir. 2009); <u>Jones</u>, 297 F.3d at 934. Plaintiff must present factual allegations sufficient to state a plausible claim for relief. <u>Iqbal</u>, 556 U.S. at 678-79; <u>Moss v. U.S. Secret Service</u>, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. <u>Iqbal</u>, 556 U.S. at 678; <u>Moss</u>, 572 F.3d at 969.

**B.    SUMMARY OF PLAINTIFF'S ALLEGATIONS**

Plaintiff is confined in the Secured Housing Unit ("SHU") at Corcoran State Prison ("CSP"), where the events at issue in this action occurred.

Plaintiff contends that on July 1, 2011, he notified Defendants Vogel, Perez, Marsical, Cortez, Martines, Vellejo, Singh, Aguirre, Wooden and John Does 1-10, that he was a participant in a statewide indefinite prisoner solid-food hunger strike. The hunger strike was launched in response to the conditions in SHUs throughout CDCR. Plaintiff contends that this hunger strike did not violate any rules.

Plaintiff alleges that from July 2, 2011, through July 19, 2011, in retaliation for his hunger strike, Defendants Vogel, Perez, Marsical, Cortez, Martines, Vellejo, Singh, Aguirre, Wooden and John Does 1 through 10, implemented and/or enforced a policy and practice that prohibited inmates who were on any type of hunger strike from receiving their daily state issue bag lunches and meal trays. This policy deprived Plaintiff of his daily state issue of "non-solid" food items for eighteen consecutive days.[2]

---

[2] Plaintiff states that Defendants Martines and Wooden gave him a half pint of milk on July 10 and July 11, 2010.

3

He further alleges that to cover up their deprivation, Defendants Marsical, Martines, Vellejo, Singh, Aquirre, Wooden and John Does 1-10 placed false entries in the daily activity log indicating that Plaintiff had refused his meals and/or tray. Plaintiff states that he asked Defendants Marsical, Cortez, Martines, Vallejo, Singh, Aquirre and Wooden why they were withholding his food, and they told him that they were following the orders of their supervisors, R. Vogel and A. Perez. Plaintiff asked Defendants Vogel and Perez why they ordered staff to withhold their food, and they told Plaintiff that they do not make any distinction between any categories of hunger strikes, and that if they allowed staff to give Plaintiff non-solid food, Plaintiff would maintain his hunger strike indefinitely. Plaintiff alleges that the orders of Vogel and Perez have caused excessive pain and weight loss.

Plaintiff alleges that each day between July 4, 2011, and July 18, 2011, he told medical staff John Does 11 through 20 that he was on a solid food diet and that staff had been withholding his daily state issued food trays since July 2, 2011. Each time, John Does 11-20 stated that it was not their concern and had him escorted back to his cell.

On July 7, 2011, Plaintiff was transported to the emergency room at CSP. He told Defendant Ulit that he was on a solid food hunger strike and that staff had been withholding his food trays since July 2, 2011. Defendant Ulit failed to intervene by giving Plaintiff food and instead had him escorted back to his cell.

On July 19, 2011, Plaintiff was transported to CSP's emergency room for medical evaluation. Plaintiff told Defendant Ulit that he had been on a hunger strike since July 1, 2011, and that for the last eighteen days, prison officials had been withholding his daily state issue of non-solid food items. Escorting officers John Doe 1 and 2 did not dispute this. Defendant Ulit found Plaintiff to be dehydrated and malnourished and admitted him to CSP's hospital for monitoring and IV fluids. He ordered that Plaintiff be placed on a 1,125 calorie liquid diet of

4

"Nutren." This was below the minimum daily requirement of 1,800 calories and subsequently caused Plaintiff great pain and continued weight loss.

Two hours after his admittance, a team of outside lawyers visited Plaintiff to ask about the withholding of food. The following day, Defendant Clark interviewed Plaintiff and wanted to know what he told the lawyers. He told Defendant Clark that the lawyers were investigating the withholding of food and he affirmed their allegations. Defendant Clark told Plaintiff that they were not going to let him use the medical facility to "grand stand" his hungers strike and that if he wanted food, all he had to do was stop the hunger strike. When Plaintiff refused, Defendant Clark told him that he would make sure he was discharged from the hospital.

Between July 19, 2011 and August 1, 2011, Plaintiff's weight continued to decline due to his deficient caloric diet. Each day, he asked Defendants Moon, Clark, Hubbard, Weaver and John Does 21 through 30 to increase his Nutren to 1,800 calories to stop his hunger pains and weight loss. They refused, stating that they did not want to accommodate his hunger strike. Subsequently, John Does 21 through 30 placed false entries into the log indicating that Plaintiff had refused his meal trays.

On July 27, 2011, the "Prison Law Office" inquired with CDCR headquarters about Plaintiff's allegations of food withholding. CDCR agreed that the prisoners on a solid-food hunger strike would not be denied liquids. However, rather than intervening, Defendants CDCR and Kernan elected to issue a memorandum to all CDCR prisoners threatening that any participation in the hunger strike would be considered disruptive behavior and met with disciplinary action. Plaintiff alleges that this caused a chilling effect and served no legitimate penological interest.

On August 1, 2011, Defendant Clark told Plaintiff that he and Defendant Wang decided to discontinue his Nutren and kick him out of the hospital as a deterrent to his continued hunger strike. Defendant Clark also stated that the Nutren diet was too expensive and set a bad

5

precedent. On August 2, 2011, Defendant Clark discontinued his Nutren, discharged him and returned him to the SHU, despite knowing that staff would continue to withhold his food.

Plaintiff alleges that Defendants Ulit, Moon, Clark, Wang, Hubbard, Weaver and John Does 21-30 had a responsibility to insure that Plaintiff received an 1,800 calorie liquid diet of Nutren. He further alleges that Defendants Clark and Wang had a responsibility to maintain Plaintiff on his liquid diet of Nutren while he was on the hunger strike. He contends that the actions of these Defendants had a chilling effect and had no penological interest.

On August 3, 2011, Plaintiff placed Defendants Hieng, Alanis and Watkins on notice that he had been on a solid food hunger strike since July 1, 2011. Defendant Hieng told Plaintiff that as long as he was on a hunger strike, he would not receive his daily meals. Defendants Hieng, Alanis, Messick, Watkins and John Does 31-40 withheld his food for three more days, until Plaintiff stopped his hunger strike. He contends that they had a responsibility to insure that he received his food, and that their failure to do so had a chilling effect.

Plaintiff stopped his hunger strike when he believed that Defendant Kernan would consider the strikers' demands. However, on October 2, 2011, Plaintiff placed Defendants Alanis, Messick, Lovelady and Hubbard that he would be resuming his hunger strike. In retaliation, Defendants Alanis, Messick, Loveland and John Does 41-50 withheld Plaintiff's food for thirteen days. Defendant Hubbard was aware, from Plaintiff's prior complaints, that staff was withholding food, but failed to intervene. Defendants Alanis, Messick and Loveland told Plaintiff that until they received orders from superior officers, they would withhold food. To cover up their actions, Defendants Alanis, Messick and John Does 41-50 placed false entries in the log book indicating that Plaintiff had refused his food.

Between October 6, 2011 and October 14, 2011, Plaintiff explained to Defendants Moon, Ulit and John Does 51-60 that prison officials had been withholding food since October 2, 2011.

6

They refused to provide Plaintiff with a substitute medical diet and repeatedly returned him to his cell without assistance.

Consequently, on October 15, 2011, Plaintiff was forced to temporarily discontinue his hunger strike.  He alleges that Defendants Alanis, Messick, Lovelady, Hubbard, Hugh, Moon, Ulit and John Does 41-60 had a responsibility to insure that Plaintiff was provided with adequate nutrition, but failed to do so.  He alleges that this caused a chilling effect.

Plaintiff's allegations then skip to almost one year later, October 13, 2012.  His allegations involve the similar claims of denial of food and/or adequate nutrition during his hunger strike, and continue through January 11, 2013.  These allegations are made against separate Defendants as those involved in the 2011 events.  These Defendants include Defendants Faldon, Molina, Torres, Quillen, Strome, Herrera, Gill, Dougherty, Kaiser, Sao, Brooks, Hayward, Riley, Rocha, Rouch, McCabe and John Does 61-70, 71-80 and 81-90.[3]

Finally, Plaintiff alleges that between 2010 and 2013, Defendants Macias, Clark, Lopez, Hubbard and Gibson implemented operational policy Number 1051, which states that once an inmate accepts a meal tray, or if staff witness the inmate consume food, the hunger strike is declared over.  Plaintiff contends that this has been interpreted by staff to allow them to withhold his food.  He contends that they are aware of this interpretation, but failed to intervene.  Their failure to do so caused Plaintiff great pain, emotional distress and weight los

Based on these allegations, Plaintiff alleges the following causes of action:

1.   Retaliation in violation of the First Amendment against Defendants Vogel, Perez, Marsical, Cortez, Martines, Vellejo, Singh, Aguirre, Wooden, Ulit and John Does 1-20 based on their withholding of food;

---

[3] As explained below, the Court recommends that claims and Defendants involved in events occurring in 2012 and 2013 be dismissed.  Therefore, the Court will not summarize these allegations in detail and will not include them in the remainder of this order.

7

2.       Retaliation in violation of the First Amendment against Defendant Kernan and CDCR based on their threat of disciplinary measures;

3.       Retaliation in violation of the First Amendment against Defendants Wang, Moon, Clark, Hubbard, Weaver and John Does 21-30 based on their refusal to increase his liquid diet and/or discontinuation of his liquid diet;

4.       Retaliation in violation of the First Amendment against Defendants Hieng, Alanis, Messick, Watkins and John Does 31-40 based on their withholding of food;

5.       Retaliation in violation of the First Amendment against Defendants Alanis, Messick, Lovelady, Hubbard, Hugh, Moon, Ulit, John Does 41-50 and John Does 51-60 based on their withholding of food and/or nutrients;

6.       Withholding food in violation of the Eighth Amendment against Defendants Vogel, Perez, Marsical, Cortez, Martines, Vellejo, Singh, Aguirre, Wooden, Ulit and John Does 1-20;

7.       Failure to intervene in violation of the Eighth Amendment against Defendants Kernan and CDCR;

8.       Refusal to increase liquid diet and/or discontinuation of liquid diet in violation of the Eighth Amendment against Defendants Wang, Moon, Clark, Hubbard, Weaver and John Does 21-30;

9.       Withholding food in violation of the Eighth Amendment against Defendants Hieng, Alanis, Messick, Watkins and Does 31-40;

10.      Withholding food and/or refusal to intervene in violation of the Eighth Amendment against Defendants Alanis, Messick, Lovelady, Hubbard, Hugh, Ulit, Moon, John Does 41-50 and John Does 51-60;

11.      Failure to clarify their hunger-strike policy and/or failure to intervene in violation of the Eighth Amendment against Defendants Macias, Clark, Lopez, Hubbard and Gibson;

12. Negligence and intentional infliction of emotional distress against Defendants Vogel, Perez, Marsical, Cortez, Martines, Vellejo, Singh, Aguirre, Wooden, Ulit, Hugh, Moon, Hieng, Alanis, Messick, Watkins, Lovelady, Hubbard, and John Does 1-20, 31-40, 41-50 and 51-60 based on withholding food;

13. Negligence and intentional infliction of emotional distress against Defendant Kernan and CDCR based on their failure to intervene;

14. Negligence and intentional infliction of emotional distress against Defendants Wang, Moon, Clark, Hubbard, Weaver and John Does 21-30 based on their refusal to increase his liquid diet and/or discontinuation of his liquid diet;

15. Malpractice against Defendants Hugh, Moon, Clark, Wang, Ulit and John Does 21-30 and 51-60 based on their refusal to intervene in the withholding of food, discontinuation of Plaintiff's liquid diet and/or refusal to increase his liquid diet;

16. Negligence and intentional infliction of emotional distress against Defendants Macias, Clark, Lopez, Hubbard and Gibson based on their failure to clarify the hunger-strike policy; and

17. "Human Right Violation of Torture" against all Defendants.

**C.  ANALYSIS**

1. All Claims and Related Defendants Occurring After October 2011

Plaintiff may not bring unrelated claims against unrelated parties in a single action. Fed. R. Civ. P. 18(a), 20(a)(2); Owens v. Hinsley, 635 F.3d 950, 952 (7th Cir. 2011); George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). As an initial matter, Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact. Fed. R. Civ. P. 20(a)(2); Coughlin v. Rogers, 130 F.3d 1348, 1351 (9th Cir. 1997); Desert Empire Bank v. Ins. Co. of North America, 623 F.3d 1371, 1375 (9th Cir. 1980). Only if

the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

In his amended complaint, Plaintiff added factual allegations for events occurring over one year *after* the events in his original complaint. Although the claims are similar to those he made in the original complaint, they are made against an entirely separate group of Defendants. Given the one year gap and separate Defendants, allowing all of Plaintiff's claims to stay in this action would effectively result in the combination of two distinct actions. It would also allow Plaintiff, who has three strikes under 28 U.S.C. § 1915(g), to avoid paying the filing fee for a new action.

Accordingly, this action may not proceed with claims related to events after October 2011. These claims, and Defendants Faldon, Molina, Torres, Quillen, Strome, Herrera, Gill, Dougherty, Kaiser, Sao, Brooks, Hayward, Riley, Rocha, Rouch, McCabe and John Does 61-70, 71-80 and 81-90 should be dismissed from this action. Plaintiff may file a new action raising these claims if he so desires.

2.  Human Rights Claims

Plaintiff alleges human rights violations and torture pursuant to the International Covenant on Civil and Political Rights, a treaty adopted by the United Nations General Assembly in 1966. However, Plaintiff cannot seek redress under section 1983 for alleged violations of this treaty because its provisions do not constitute rights, privileges, or immunities secured by federal law. Accordingly, the alleged violations of international law fail to state any claim on which relief can be granted and should be dismissed. See eg., Oluwa v. Sec'y of State, 2006 WL 3147682, *1 (E.D.Cal. 2006).

3.     Defendant CDCR

The Eleventh Amendment "'erects a general bar against federal lawsuits brought against the state.'" Wolfson v. Brammer, 616 F.3d 1045, 1065-66 (9th Cir. 2010) (quoting Porter v. Jones, 319 F.3d 483, 491 (9th Cir. 2003)).  Accordingly, Plaintiff cannot bring suit against CDCR in federal court because it is a state agency and is entitled to Eleventh Amendment immunity.  Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007).  CDCR should therefore be dismissed.

4.     First Amendment Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim.  Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

*Withholding of State Issued Food/Refusal to Provide Liquid Diet*

As the Court found in the prior screening order, Plaintiff has stated a retaliation claim against Defendants Vogel, Perez, Marsical, Cortez, Martines, Vellejo, Singh, Aguirre, Wooden, Alanis, Messick, and John Does 1-10.  Plaintiff also states a retaliation claim against Defendants Ulit, Watkins, Hieng, Lovelady, Hubbard, Hugh, Moon and John Does 11-20, 41-50 and 51-60.[4]

---

[4] Plaintiff will be instructed on service in a separate order.

11

*Threat of Disciplinary Measures*

As found in the prior screening order, Plaintiff states a retaliation claim against Defendant Kernan.

*Refusal to Increase Liquid Diet*

In the prior screening order, the Court found that Plaintiff's allegations that Defendants refused to increase his liquid diet from 1,125 calories to the minimum daily caloric requirement was not a sufficient adverse action to support a retaliation claim. This continues to be true for almost identical allegations in the FAC. Accordingly, he fails to state a claim for retaliation against Defendants Moon, Clark, Wang, Hubbard, Weaver and Does 21-30 based on their refusal to increase his liquid diet.

*Discontinuation of Liquid Diet*

Plaintiff's allegations that Defendants Clark and Wang discontinued his liquid diet and returned him to custody are sufficient to state a retaliation claim against them.

5. <u>Eighth Amendment- Conditions of Confinement</u>

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. <u>Morgan v. Morgensen</u>, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 847 (1994) and <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. <u>Morgan</u>, 465 F.3d at 1045 (citing <u>Rhodes</u>, 452 U.S. at 347) (quotation marks omitted). Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment. <u>Morgan</u>, 465 F.3d at 1045 (quotation marks and citations omitted); <u>Hope v. Pelzer</u>, 536 U.S. 730, 737 (2002); <u>Rhodes</u>, 452 U.S. at 346.

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, <u>Johnson v. Lewis</u>, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, <u>Morgan</u>, 465 F.3d at 1045 (quotation marks omitted). To succeed on an Eighth Amendment conditions of confinement claim, a prisoner must show that (1) the defendant prison official's conduct deprived him or her of the minimal civilized measure of life's necessities and (2) that the defendant acted with deliberate indifference to the prisoner's health or safety. <u>Farmer</u>, 511 U.S. at 834. Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. <u>Hudson</u>, 503 U.S. at 9.

*Withholding of Food/Failure to Intervene*

As the Court found in the first screening order, Plaintiff has stated a claim against Defendants Vogel, Perez, Marsical, Cortez, Martines, Vellejo, Singh, Aguirre, Wooden, Alanis and Messick for violation of the Eighth Amendment based on their withholding of non-solid food for extended periods of time. He has also stated a claim against Defendants Ulit, Watkins, Hieng, Lovelady, Hubbard, Hugh, Moon, Kernan and John Does 1-20, 31-40, 41-50 and 51-60.

*Implementation of Policy*

Plaintiff alleges that Defendants Macias, Clark, Lopez, Hubbard and Gibson implemented a policy that allowed staff to withhold Plaintiff's food. Plaintiff contends that they knew of the way staff construed the policy yet failed to intervene. Plaintiff's allegations are sufficient to state an Eight Amendment claim against them. <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989); accord <u>Starr v. Baca</u>, 652 F.3d 1202, 1205-08 (9th Cir. 2011), <u>cert</u>. <u>denied</u>, 132 S.Ct. 2101 (2012).

### 6. Eighth Amendment Medical Care

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must show deliberate indifference to his serious medical needs. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 295 (1976)) (quotation marks omitted). The two-part test for deliberate indifference requires the plaintiff to show (1) a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain, and (2) the defendant's response to the need was deliberately indifferent. Jett, 439 F.3d at 1096 (quotation marks and citation omitted).

Deliberate indifference is shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference. Id. (citation and quotation marks omitted). Deliberate indifference may be manifested when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care. Id. (citation and quotations omitted). Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

*Refusal to Increase Liquid Diet*

In the prior screening order, the Court found that Plaintiff's allegations of deliberate indifference to a serious medical need based on Defendants' refusal to increase his liquid diet did not state a claim. For the same reasons, Plaintiff fails to state a claim with similar allegations in his FAC. He therefore fails to state a claim against Defendants Moon, Clark, Wang, Hubbard, Weaver and Does 21-30 based on their refusal to increase his liquid diet.

*Discontinuation of Liquid Diet*

Plaintiff's allegations that Defendants Clark and Wang discharged him from the hospital and discontinued his liquid diet state a claim for deliberate indifference to a serious medical need in violation of the Eighth Amendment.

7. <u>Negligence</u>

"Under California law, '[t]he elements of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages).'" <u>Corales v. Bennett</u>, 567 F.3d 554, 572 (9th Cir. 2009) (quoting <u>McGarry v. Sax</u>, 158 Cal.App.4th 983, 994, 70 Cal.Rptr.3d 519 (2008) (internal quotations omitted)).

*Withholding of Food*

As found in the first screening order, Plaintiff has stated a claim for negligence against Defendants Vogel, Perez, Marsical, Cortez, Martines, Vellejo, Singh, Aguirre, Wooden, Alanis and Messick based on their withholding of non-solid food for extended periods of time. Based on additional allegations in his FAC, he has also stated a claim for negligence against Ulit, Watkins, Hieng, Lovelady, Hubbard and Does 1-20, 31-40, 41-50 and 51-60.[5]

*Refusal to Increase Liquid Diet*

Plaintiff states a negligence claim against Defendants Wang, Moon, Clark, Hubbard, Weaver and Does 21-30 based on their refusal to increase Plaintiff's liquid diet.

*Failure to Intervene*

Plaintiff states a negligence claim against Defendant Kernan based on his failure to intervene in the withholding of food.

---

[5] Plaintiff has alleged compliance with the California Tort Claim Act.

*Failure to Clarify Hunger Strike Policy*

Plaintiff states a negligence claim against Defendants Macias, Clark, Lopez, Hubbard and Gibson based on their failure to clarify the hunger strike policy.

8.      <u>Intentional Infliction of Emotional Distress</u>

Under California law, the elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. <u>Corales v. Bennett</u>, 567 F.3d 554, 571 (9th Cir. 2009) (quotation marks omitted); <u>Tekkle v. United States</u>, 567 F.3d 554, 855 (9th Cir. 2007); <u>Simo v. Union of Needletrades, Industrial & Textile Employees</u>, 322 F.3d 602, 621-22 (9th Cir. 2003). Conduct is outrageous if it is so extreme as to exceed all bounds of that usually tolerated in a civilized community. <u>Corales</u>, 567 F.3d at 571; <u>Tekkle</u>, 511 F.3d at 855; <u>Simo</u>, 322 F.3d at 622.

*Withholding of Food*

Plaintiff has stated a claim for intentional infliction of emotional distress against Defendants Vogel, Perez, Marsical, Cortez, Martines, Vellejo, Singh, Aguirre, Wooden, Alanis, Messick, Ulit, Watkins, Hieng, Lovelady, Hubbard and Does 1-20, 31-40, 41-50 and 51-60 based on their withholding of non-solid food for extended periods of time.

*Refusal to Increase Liquid Diet*

Plaintiff's allegations against Defendants Wang, Moon, Clark, Hubbard, Weaver and Does 21-30 are based on their alleged refusal to increase the calories in Plaintiff's liquid diet. This is not "extreme and outrageous" conduct and therefore fails to state a claim for intentional infliction of emotional distress against them.

*Failure to Intervene*

Plaintiff states an intentional infliction of emotional distress claim against Defendant Kernan based on his failure to intervene in the withholding of food.

*Failure to Clarify Hunger Strike Policy*

The alleged failure to Defendants Macias, Clark, Lopez, Hubbard and Gibson to clarify the hunger strike policy does not constitute "extreme and outrageous" conduct. He therefore fails to state a claim for intentional infliction of emotional distress against them.

9. <u>Medical Malpractice</u>

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c). "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." <u>Acri v. Varian Assoc., Inc.,</u> 114 F.3d 999, 1000 (9th Cir.1997).

"The elements of a medical malpractice claim are (1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and resulting injury; and (4) actual loss or damage resulting from the professional's negligence." <u>Avivi v. Centro Medico Urgente Med. Ctr.</u>, 159 Cal.App.4th 463, 468, n.2 (2008) (internal quotations and citation omitted).

Construed liberally, Plaintiff has stated a claim for medical malpractice against Defendants Moon, Clark, Hugh, Wang, Ulit and Hodes 21-30 and 51-60.

D. **FINDINGS AND RECOMMENDATIONS**

The Court finds the following cognizable claims: (1) retaliation in violation of the First Amendment against Defendants Vogel, Perez, Marsical, Cortez, Martines, Vellejo, Singh, Aguirre, Wooden, Alanis, Messick, Ulit, Watkins, Hieng, Lovelady, Hubbard, Hugh, Moon, Kernan, Clark, Wang, Weaver and John Does 1-10, 11-20, 21-30 and 31-40; (2) inhumane conditions of confinement in violation of the Eighth Amendment against Defendants Vogel, Perez, Marsical, Cortez, Martines, Vellejo, Singh, Aguirre, Wooden, Alanis, Messick, Ulit, Watkins, Hieng, Lovelady, Hubbard, Hugh, Moon, Kernan, Macias, Clark, Lopez, Gibson and John Does 1-20, 31-40, 41-50 and 51-60; (3) deliberate indifference to a serious medical need in violation of the Eighth Amendment against Defendants Clark and Wang; (4) negligence against Defendants Vogel, Perez, Marsical, Cortez, Martines, Vellejo, Singh, Aguirre, Wooden, Alanis, Messick, Ulit, Watkins, Hieng, Lovelady, Hubbard, Hugh, Moon, Kernan, Clark, Wang, Weaver, Macias, Lopez, Gibson and John Does 1-20, 31-40, 41-50 and 51-60; (5) intentional infliction of emotional distress against Defendants Vogel, Perez, Marsical, Cortez, Martines, Vellejo, Singh, Aguirre, Wooden, Alanis, Messick, Ulit, Watkins, Hieng, Lovelady, Hubbard, Kernan and Does 1-20, 31-40, 41-50 and 51-60; and (6) medical malpractice against Defendants Moon, Clark, Hugh, Wang, Ulit and Does 21-30 and 51-60.

It does not, however, state any further claims and these deficiencies cannot be cured. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff will be instructed on service in a separate order.

Accordingly, it is HEREBY RECOMMENDED that the remaining claims and Defendants be DISMISSED WITHOUT LEAVE TO AMEND for failure to state a claim under section 1983. These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, Plaintiff

may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **April 2, 2013**                                      /s/ *Dennis L. Beck*
                                                                                    UNITED STATES MAGISTRATE JUDGE