1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **EASTERN DISTRICT OF CALIFORNIA**

10

11   BRYAN E. RANSOM,                    ) Case No.: 1:12cv01343 AWI DLB (PC)
                                         )
12              Plaintiff,               )
                                         )
13      v.                               ) FINDINGS AND RECOMMENDATIONS
                                         ) REGARDING DEFENDANTS' MOTION TO
14   RODOLFO AQUIRRE, et al.,            ) DISMISS
                                         )
15              Defendants.              ) (Document 41)
                                         )
16   _____)

17        Plaintiff Bryan E. Ransom ("Plaintiff") is a state prisoner proceeding pro se in this civil rights

18   action.  Defendants paid the filing fee and removed the action to this Court on August 16, 2012.

19        On June 17, 2013, Defendants filed an unenumerated Rule 12(b) Motion to Dismiss based on

20   exhaustion.  Plaintiff filed an opposition on July 3, 2013, and Defendants filed a reply on July 9,

21   2013.[1]  The motion is deemed submitted pursuant to Local Rule 230(l).

22   **A.     PROCEDURAL HISTORY**

23        Plaintiff initially filed this action in the Kings County Superior Court on July 26, 2012.

24   Defendants Aguirre, Alanis, Messick, Clark, Cortez, Kernan, Mariscal, Moon, Perez, Singh, Ulit,

25   Vallejo, Vogel, Wang, and Wooden removed the action to this Court August 16, 2012.

26   _____

27   [1] In Defendants' June 17, 2013, notice, filed concurrently with this Motion to Dismiss, Plaintiff was provided with notice
     of the requirements for opposing a motion to dismiss for failure to exhaust.  Wyatt v. Terhune, 315 F.3d 1108, 1120 n. 14
     (9th Cir. 2003).
28

1

1    On January 31, 2013, the Court screened Plaintiff's complaint and ordered him to either file an

2  amended complaint or notify the Court of his willingness to proceed on the cognizable claims.

3  Plaintiff filed a First Amended Complaint on March 6, 2013.

4    On April 3, 2013, the Court issued Findings and Recommendations that this action proceed on

5  claims under the First and Eighth Amendment, as well as state law claims.  The Findings and

6  Recommendations were adopted on May 8, 2013.

7    Also on April 3, 2013, the Court ordered Plaintiff to serve Defendants Martines, Watkins,

8   Hieng, Lovelady, Hubbard, Hugh, Weaver, Macias, Lopez and Gibson because they had not yet been

9  served in the state action.  On August 26, 2013, the Court issued an Order to Show Cause why these

10  Defendants should not be dismissed based on Plaintiff's failure to effectuate service.  A response to

11  the Order to Show Cause is due on or about November 3, 2013.

12  **B.       PLAINTIFF'S ALLEGATIONS[2]**

13    Plaintiff is confined in the Secured Housing Unit ("SHU") at Corcoran State Prison ("CSP"),

14  where the events at issue in this action occurred.

15    Plaintiff contends that on July 1, 2011, he notified Defendants Vogel, Perez, Marsical, Cortez,

16  Martines, Vellejo, Singh, Aguirre and Wooden that he was a participant in a statewide indefinite

17  prisoner solid-food hunger strike.  The hunger strike was launched in response to the conditions in

18  SHUs throughout CDCR. Plaintiff contends that this hunger strike did not violate any rules.

19    Plaintiff alleges that from July 2, 2011, through July 19, 2011, in retaliation for his hunger

20  strike, Defendants Vogel, Perez, Marsical, Cortez, Martines, Vellejo, Singh, Aguirre and Wooden

21  implemented and/or enforced a policy and practice that prohibited inmates who were on any type of

22  hunger strike from receiving their daily state issue bag lunches and meal trays.  This policy deprived

23  Plaintiff of his daily state issue of "non-solid" food items for eighteen consecutive days.

24    Plaintiff states that he asked Defendants Marsical, Cortez, Martines, Vallejo, Singh, Aguirre

25  and Wooden why they were withholding his food, and they told him that they were following the

26  orders of their supervisors, R. Vogel and A. Perez.  Plaintiff asked Defendants Vogel and Perez why

27

28  _____

[2] Plaintiff has named numerous Does, though not all are included in this discussion.

2

1  they ordered staff to withhold food, and they told Plaintiff that they do not make any distinction

2  between any categories of hunger strikes, and that if they allowed staff to give Plaintiff non-solid food,

3  Plaintiff would maintain his hunger strike indefinitely.  Plaintiff alleges that the orders of Vogel and

4  Perez have caused excessive pain and weight loss.

5        Plaintiff alleges that each day between July 4, 2011, and July 18, 2011, he told medical staff

6  John Does 11 through 20 that he was on a solid food diet and that staff had been withholding his daily

7  state issued food trays since July 2, 2011.  Each time, John Does 11-20 said that it was not their

8  concern and had him escorted back to his cell.

9        On July 7, 2011, Plaintiff was transported to the emergency room at CSP.  He told Defendant

10  Ulit that he was on a solid food hunger strike and that staff had been withholding his food trays since

11  July 2, 2011.  Defendant Ulit failed to intervene by giving Plaintiff food and instead had him escorted

12  back to his cell.

13        On July 19, 2011, Plaintiff was transported to CSP's emergency room for a medical evaluation.

14  Plaintiff told Defendant Ulit that he had been on a hunger strike since July 1, 2011, and that for the last

15  eighteen days, prison officials had been withholding his daily state issue of non-solid food items.

16  Defendant Ulit found Plaintiff to be dehydrated and malnourished and admitted him to CSP's hospital

17  for monitoring and IV fluids.  He ordered that Plaintiff be placed on a 1,125 calorie liquid diet of

18  "Nutren."  This was below the minimum daily requirement of 1,800 calories and subsequently caused

19  Plaintiff great pain and continued weight loss.

20        Two hours after his admittance, a team of outside lawyers visited Plaintiff to ask about the

21  withholding of food.  The following day, Defendant Clark interviewed Plaintiff and wanted to know what

22  he told the lawyers.  He told Defendant Clark that the lawyers were investigating the withholding of food

23  and he affirmed their allegations.  Defendant Clark told Plaintiff that they were not going to let him use the

24  medical facility to "grand stand" his hungers strike and that if he wanted food, all he had to do was stop the

25  hunger strike.  When Plaintiff refused, Defendant Clark told him that he would make sure he was

26  discharged from the hospital.

27        Between July 19, 2011 and August 1, 2011, Plaintiff's weight continued to decline due to his

28  deficient caloric diet.  Each day, he asked Defendants Moon, Clark, Hubbard and Weaver to increase

1   his Nutren to 1,800 calories to stop his hunger pains and weight loss.  They refused, stating that they

2   did not want to accommodate his hunger strike.

3          On July 27, 2011, the "Prison Law Office" inquired with CDCR headquarters about Plaintiff's

4   allegations of food withholding.  CDCR agreed that the prisoners on a solid-food hunger strike would

5   not be denied liquids.  However, rather than intervening, CDCR and Defendant Kernan elected to

6   issue a memorandum to all CDCR prisoners threatening that any participation in the hunger strike

7   would be considered disruptive behavior and met with disciplinary action.  Plaintiff alleges that this

8   caused a chilling effect and served no legitimate penological interest.

9          On August 1, 2011, Defendant Clark told Plaintiff that he and Defendant Wang decided to

10  discontinue his Nutren and kick him out of the hospital as a deterrent to his continued hunger strike.

11  Defendant Clark also stated that the Nutren diet was too expensive and set a bad precedent.  On

12  August 2, 2011, Defendant Clark discontinued his Nutren, discharged him and returned him to the

13  SHU, despite knowing that staff would continue to withhold his food.

14         Plaintiff alleges that Defendants Ulit, Moon, Clark, Wang, Hubbard and Weaver had a

15  responsibility to insure that Plaintiff received an 1,800 calorie liquid diet of Nutren.  He further alleges

16  that Defendants Clark and Wang had a responsibility to maintain Plaintiff on his liquid diet of Nutren

17  while he was on the hunger strike.  He contends that the actions of these Defendants had a chilling

18  effect and had no penological interest.

19         On August 3, 2011, Plaintiff placed Defendants Hieng, Alanis and Watkins on notice that he

20  had been on a solid food hunger strike since July 1, 2011.  Defendant Hieng told Plaintiff that as long

21  as he was on a hunger strike, he would not receive his daily meals.  Defendants Hieng, Alanis,

22  Messick and Watkins withheld his food for three more days, until Plaintiff stopped his hunger strike.

23  He contends that they had a responsibility to insure that he received his food, and that their failure to

24  do so had a chilling effect.

25         Plaintiff stopped his hunger strike when he believed that Defendant Kernan would consider the

26  strikers' demands.  However, on October 2, 2011, Plaintiff placed Defendants Alanis, Messick,

27  Lovelady and Hubbard that he would be resuming his hunger strike.  In retaliation, Defendants Alanis,

28  Messick and Lovelady withheld Plaintiff's food for thirteen days.  Defendant Hubbard was aware,

4

from Plaintiff's prior complaints, that staff was withholding food, but failed to intervene.  Defendants Alanis, Messick and Lovelady told Plaintiff that until they received orders from superior officers, they would withhold food.

Between October 6, 2011, and October 14, 2011, Plaintiff explained to Defendants Moon and Ulit that prison officials had been withholding food since October 2, 2011.  They refused to provide Plaintiff with a substitute medical diet and repeatedly returned him to his cell without assistance.

Consequently, on October 15, 2011, Plaintiff was forced to temporarily discontinue his hunger strike.  He alleges that Defendants Alanis, Messick, Lovelady, Hubbard, Hugh, Moon and Ulit had a responsibility to insure that Plaintiff was provided with adequate nutrition, but failed to do so.  He alleges that this caused a chilling effect.

Based on these allegations, the Court found the following cognizable claims:

1.      Retaliation in violation of the First Amendment against Defendants Vogel, Perez, Marsical, Cortez, Martines, Vellejo, Singh, Aguirre, Wooden, Alanis, Messick, Ulit, Watkins, Hieng, Lovelady, Hubbard, Hugh and Moon based on their withholding of state issued non-solid food for an extended period of time and/or refusal to provide a liquid diet;

2.      Retaliation against Defendant Kernan based on his threat of disciplinary measures;

3.      Retaliation against Defendants Clark and Wang based on the allegation that they discontinued Plaintiff's liquid diet and returned him to custody;

4.      Inhumane conditions of confinement in violation of the Eighth Amendment against Defendants Vogel, Perez, Marsical, Cortez, Martines, Vellejo, Singh, Aguirre, Wooden, Alanis, Messick, Ulit, Watkins, Hieng, Lovelady, Hubbard, Hugh, Moon and Kernan based on their withholding of non-solid food for extended periods of time and/or failure to intervene;

5.      Inhuman conditions of confinement against Defendants Macias, Clark, Lopez, Hubbard and Gibson based on their implementation of a policy that permitted staff to withhold Plaintiff's food and/or failure to intervene;

6.      Deliberate indifference to a serious medical need in violation of the Eighth Amendment against Defendants Clark and Wang based on discharging Plaintiff from the hospital and discontinuing his liquid diet;

5

1          7.       Negligence against Defendants Vogel, Perez, Marsical, Cortez, Martines, Vellejo,

2 Singh, Aguirre, Wooden, Alanis, Messick, Ulit, Watkins, Hieng, Lovelady and Hubbard based on

3 withholding of non-solid food for extended periods of time;

4          8.       Negligence against Defendants Wang, Moon, Clark, Hubbard and Weaver based on

5 their refusal to increase Plaintiff's liquid diet;

6          9.       Negligence against Defendant Kernan based on his failure to intervene in the

7 withholding of food;

8          10.      Negligence against Defendants Macias, Clark, Lopez, Hubbard and Gibson based on

9 their failure to clarify the hunger strike policy;

10          11.      Intentional infliction of emotional distress against Defendants Vogel, Perez, Marsical,

11 Cortez, Martines, Vellejo, Singh, Aguirre, Wooden, Alanis, Messick, Ulit, Watkins, Hieng, Lovelady

12 and Hubbard based on withholding of non-solid food for extended periods of time;

13          12.      Intentional infliction of emotional distress against Defendants Wang, Moon, Clark,

14 Hubbard and Weaver based on their refusal to increase Plaintiff's liquid diet;

15          13.      Intentional infliction of emotional distress against Defendant Kernan based on his

16 failure to intervene in the withholding of food; and

17          14.      Medical malpractice against Defendants Moon, Clark, Hugh, Wang and Ulit.

18 **C.**       **PLRA EXHAUSTION REQUIREMENT**

19          1.      <u>Legal Standard</u>

20          Pursuant to the Prison Litigation Reform Act of 1996, "[n]o action shall be brought with

21 respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined

22 in any jail, prison, or other correctional facility until such administrative remedies as are available are

23 exhausted." 42 U.S.C. § 1997e(a). Prisoners are required to exhaust the available administrative

24 remedies prior to filing suit. <u>Jones v. Bock</u>, 549 U.S. 199, 211, 127 S.Ct. 910 (2007); <u>McKinney v.</u>

25 <u>Carey</u>, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). Exhaustion is required regardless of the relief

26 sought by the prisoner and regardless of the relief offered by the process, <u>Booth v. Churner</u>, 532 U.S.

27 731, 741, 121 S.Ct. 1819 (2001), and the exhaustion requirement applies to all suits relating to prison

28 life, <u>Porter v. Nussle</u>, 435 U.S. 516, 532, 122 S.Ct. 983 (2002). An administrative grievance must

1   alert the prison to the nature of the wrong for which redress is sought.  Griffin v. Arpaio, 557 F.3d

2   1117, 1120 (9th Cir. 2009).

3          The failure to exhaust in compliance with section 1997e(a) is an affirmative defense under

4   which the defendants have the burden of raising and proving the absence of exhaustion.  Jones, 549

5   U.S. at 216; Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  The failure to exhaust is subject

6   to an unenumerated Rule 12(b) motion, and in resolving the motion, the Court may look beyond the

7   pleadings and decide disputed issues of fact.  Stratton v. Buck, 697 F.3d 1004, 1008 (9th Cir. 2012);

8   Morton v. Hall, 599 F.3d 942, 945 (9th Cir. 2010); Wyatt, 315 F.3d at 1119-20.  If the Court

9   concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice.  Jones,

10  549 U.S. at 223-24; Lira v. Herrera, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

11         Defendants bear the initial burden, as the moving party, to demonstrate the absence of any

12  evidence that exhaustion occurred.  Wyatt, 315 F.3d at 1119.  The burden then shifts to Plaintiff to

13  produce evidence demonstrating either exhaustion or the existence of circumstances excusing

14  exhaustion.  Sapp v. Kimbrell, 623 F.3d 813, 822-23 (9th Cir. 2010); Nunez v. Duncan, 591 F.3d

15  1217, 1224 (9th Cir. 2010).

16         2.      Appeals Process

17         The California Department of Corrections and Rehabilitation ("CDCR") has an administrative

18  grievance system for prisoners to appeal any departmental decision, action, condition, or policy having

19  an adverse effect on prisoners' welfare.  Cal. Code Regs. tit. 15, § 3084.1.  During the relevant times,

20  a prisoner must proceed through an initial informal level and three formal levels of review,

21  culminating in a third-level decision.  Cal. Code Regs. tit. 15, § 3084.5.  In order to satisfy section

22  1997e(a), California state prisoners are required to use this process to exhaust their claims prior to

23  filing suit.  Woodford v. Ngo, 548 U.S. 81, 85-86, 126 S.Ct. 2378 (2006); McKinney, 311 F.3d at

24  1199-1201.

25         3.      Discussion

26                 a.      *Uncontested Claims*

27         Defendants agree that Plaintiff has exhausted the following claims: (1) retaliation in violation

28  of the First Amendment against Defendants Vogel, Perez, Marsical, Cortez, Martines, Vellejo, Singh,

7

1   Aguirre and Wooden based on withholding food trays and depriving Plaintiff of his daily non-solid

2   food items from July 2, 2011 to July 19, 2011; (2) inhumane conditions of confinement in violation of

3   the Eighth Amendment against Defendants Vogel, Perez, Marsical, Cortez, Martines, Vellejo, Singh,

4   Aguirre and Wooden based on withholding food trays and depriving Plaintiff of his daily non-solid

5   food items from July 2, 2011 to July 19, 2011; (3) retaliation in violation of the First Amendment

6   against Defendant Ulit based on allegations that he failed to intervene when others withheld Plaintiff's

7   food and did not provide Plaintiff with a food tray on July 7, 2011; (4) inhumane conditions of

8   confinement against Defendant Ulit based on allegations that he failed to intervene when others

9   withheld Plaintiff's food and did not provide Plaintiff with a food tray on July 7, 2011.  Defendants

10  also agree that the state law claims related to these federal claims (negligence, intentional infliction of

11  emotional distress and medical malpractice against Defendant Ulit) are exhausted.

12          Moreover, Plaintiff does not dispute Defendants' arguments that Plaintiff's appeals numbered

13  COR HC 11048550 (cancelled as time barred), COR HC 11047251 (screened out) or COR HC

14  11047053 (denied at First Level) did not exhaust any claims.  Tercero Decl. Exs. 1, 3 and 4.  The

15  Court addresses the parties' remaining arguments below.

16                  b.      *Appeal COR-11-01820*

17          This appeal, signed by Plaintiff on July 11, 2011, contains allegations that prison officials

18  retaliated against Plaintiff for participating in a statewide hunger strike of solid foods by withholding

19  his daily state-issue of non-solid food items.  Plaintiff requests that he be provided with his daily non-

20  solid food items.  Lozano Decl. Ex. 1.

21          There is no dispute that this appeal was exhausted through the Third Level of Review.  In fact,

22  as noted above, Defendants agree that this appeal exhausted certain claims for the time period July 2,

23  2011, through July 19, 2011.  However, Defendants argue that it does not exhaust Plaintiff's claims

24  relating to implementation of the policy that allowed staff to withhold food, refusal to increase his

25  liquid diet, discontinuation of his liquid diet, failure to clarify the hunger strike policy or threatening

26  discipline because these claims arose *after* July 11, 2011.

27          In opposition, Plaintiff argues that his response to a question at the Second Level of Review

28  exhausted claims against additional Defendants occurring after July 11, 2011.  He explains that in a

1    letter dated September 22, 2011, the Appeals Coordinator found that the issue had been resolved at the

2    First Level because, as of August 5, 2011, Plaintiff had accepted a meal tray and ended his hunger

3    strike.  The Appeals Coordinator asked Plaintiff "Are you trying to change the issue to something else

4    (not allowed) or are you still claiming you are not getting the food items?"  Pl.'s Decl. Ex. D.  On

5    October 5, 2011, Plaintiff responded that he was indeed claiming that he was not receiving his non-

6    solid food items.  Plaintiff stated that he was now in Phase II of his hunger strike and that prison

7    officials were still refusing to give him his daily state issue of non-solid food.  Pl.'s Decl. Ex. E.

8        In reply, Defendants cite Title 15 of the California Code of Regulations, Section 3084.1(b),

9    which states:  "Administrative remedies shall not be considered exhausted relative to any new issue,

10   information, or person later named by the appellant *that was not included in the originally submitted*

11   *[appeal]* and addressed through all required levels of administrative review up to and including the

12   third level."  (emphasis added).

13       Defendants are correct.  Events occurring after July 19, 2011, are new issues dealing with a

14   different "phase" of his hunger strike, which, according to his allegations, began on October 2, 2011.

15   Plaintiff's initial appeal could not have placed the prison on notice of his claims because they had not

16   yet occurred.  Rather than inviting Plaintiff to include new claims, the question in the Second Level

17   letter was directed at whether Plaintiff disagreed with the First Level finding that as of August 5, 2011,

18   Plaintiff was receiving his meals.  A prisoner does not exhaust administrative remedies when he

19   includes new issues from one level of review to another.  Dawkins v. Butler, 2013 WL 2475870, *8

20   (S.D. Cal. 2013(a claim made for the first time in plaintiff's request for Third Level Review was

21   insufficient to exhaust the issue where it was not included in the original appeal).

22       Accordingly, COR-11-01820 does not exhaust any additional issues.

23              c.       *Plaintiff's Appeal Dated July 22, 2011*

24       Plaintiff points to a July 22, 2011, appeal, submitted while Plaintiff was in the hospital, that

25   alleges hospital staff were retaliating against him by only providing him with less than 1,150 calories a

26   day.  He requests that he receive 2,000 to 2,500 calories daily.  Pl.'s Decl. Ex. G.  On August 1, 2011,

27   Appeals Coordinator S. Torres cancelled the appeal because it duplicated the issues raised in COR-11-

28   01820 (discussed above).  Pl.'s Ex. H.

1    Based on this, Plaintiff argues that "according to the Appeals Coordinator's interpretation and

2    cancellation" of the July 22, 2011, appeal as a duplicate of COR-11-01820, then COR-11-01820 also

3    serves to exhaust issues related to Plaintiff's claims based on refusal to increase his caloric intake.

4    Alternatively, Plaintiff argues that Torres' August 1, 2011, cancellation indicated that no remedies

5    were available.

6        Insofar as Plaintiff argues that COR-11-01820, by virtue of the Appeals Coordinator's

7    interpretation, also exhausts issues related to the increase in calories, he is incorrect.  The Appeals

8    Coordinator's interpretation, whether correct or not, does not somehow *add* claims to COR-11-01820.

9        More to the point, the cancellation also fails to demonstrate that no remedies were available.

10   In support of his argument, Plaintiff cites Harvey v. Jordan, 605 F.3d 681, 683-84 (9th Cir. 2010),

11   where the Ninth Circuit held that an inmate has no obligation to appeal from grant of relief, or partial

12   grant that satisfies him.  In Harvey, the court further found that "[t]here is no obligation to appeal from

13   a decision when the rejection form states that the 'action may not be appealed.'"  Id. at 685.

14       Unlike the situation in Harvey, the decision to cancel the appeal was appealable.  The August

15   1, 2011 letter specifically stated, "However, a separate appeal can be filed on the cancellation

16   decision."  Thus, although Plaintiff chose not to do so, there were further remedies available to him

17   and he cannot carry his burden of showing an excuse to the exhaustion requirement.

18       Thus, Plaintiff's July 22, 2011, appeal does not exhaust any issues.

19              d.        *Plaintiff's Appeals Dated August 17, 2011 and October 22, 2011*

20       Plaintiff contends that he submitted two appeals to which he never received a response.  On

21   August 17, 2011, he submitted an appeal alleging that on July 29, 2011, he informed Warden Hubbard

22   that medical staff was refusing to increase his liquid diet, and that staff were misinterpreting Operating

23   Procedure 1051.  He contends that despite their knowledge, Defendant Hubbard and Defendant

24   Weaver did nothing.  Pl.'s Decl. Ex. I.  On October 22, 2011, Plaintiff submitted an appeal contending

25   that Defendant Kernan had been placed on notice that prison officials were withholding food.  Instead

26   of intervening, Plaintiff contends that Defendant Kernan issued a memorandum threatening to take

27   disciplinary measures against hunger strike participants.

28

1      Plaintiff states that he submitted the appeals through the prison mail system, but that he never

2  received a response to either of these appeals.  Pl.'s Decl. ¶¶ 10-13.  As he did not receive a response

3  or further instructions on how to proceed, Plaintiff contends that the exhaustion requirement is

4  satisfied.

5      In reply, Defendants contend that Plaintiff should have done more than simply submitting his

6  602s through the prison mail system.  Defendants argue that he failed to follow up on the 602s in any

7  way, and that if he had asked a counselor, he would have been provided with further instructions.

8  Defendants also argue that to grant Plaintiff an exception "based solely on his self-serving testimony

9  that his 602s were lost by prison officials would completely undermine the rule."  Reply 6.

10      While the absence of evidence that a grievance was officially filed may indicate Plaintiff never

11  submitted the grievance, it may also indicate that the grievance was discarded or ignored by staff.  See

12  Spence v. Director of Corr., 2007 WL 61006, *3 (E.D. Cal. 2007) (If prison officials "are interfering

13  with inmates' ability to properly file their 602s, then there will be no official record of the 602s having

14  been 'accepted.'").

15      Here, while it is true that Plaintiff does not indicate that he took any further actions after not

16  receiving a response, his failure to further act is not sufficient to meet Defendants' burden of showing

17  that pertinent relief remained available.  Brown v. Valoff, 422 F.3d 926, 930 (9th Cir. 2005).

18  Specifically, there is no rule or regulation *requiring* Plaintiff to take further action.  Once Plaintiff

19  indicates that he has done what is required, Defendants cannot defeat his statements simply by

20  contending that he should have done more.

21      In a situation such as this, where the parties offer differing versions of events based on

22  competing declarations, the issue is one of witness credibility and the Court cannot make that requisite

23  assessment on a motion to dismiss.  Accordingly, Defendants' motion to dismiss for failure to exhaust

24  on these issues is denied without prejudice.[3]

25

26  ---

[3] Defendants argue that even if he exhausted, the August 17, 2011, appeal would only satisfy exhaustion as to the already-dismissed claim of retaliation based on failure to increase Plaintiff's caloric intake.  However, it is not clear that the appeal
27  would not exhaust different causes of action based on the same set of facts.  Moreover, the August 17, 2011, also includes allegations that staff is misinterpreting Operating Procedure 1051.  This allegation is related to claims against Defendants
28  Macias, Clark, Lopez, Hubbard and Gibson.

1   **D**.       **CALIFORNIA GOVERNMENT TORT CLAIMS ACT**

2           1.       Legal Standard

3           Under the California Government Claims Act (the "Act"), set forth in California Government

4   Code sections 810 *et seq*., a plaintiff may not bring a suit for monetary damages against a public

5   employee or entity unless the plaintiff first presented the claim to the California Victim Compensation

6   and Government Claims Board (the "Board"), and the Board acted on the claim, or the time for doing

7   so expired.  "The Tort Claims Act requires that any civil complaint for money or damages first be

8   presented to and rejected by the pertinent public entity."  Munoz v. California, 33 Cal.App.4th 1767,

9   1776 (1995).  The purpose of this requirement is "to provide the public entity sufficient information to

10  enable it to adequately investigate claims and to settle them, if appropriate, without the expense of

11  litigation."  City of San Jose v. Superior Court, 12 Cal.3d 447, 455 (1974) (citations omitted).

12  Compliance with this "claim presentation requirement" constitutes an element of a cause of action for

13  damages against a public entity or official.  State v. Superior Court (Bodde), 32 Cal.4th 1234, 1244

14  (2004).  Thus, in the state courts, "failure to allege facts demonstrating or excusing compliance with

15  the claim presentation requirement subjects a claim against a public entity to a demurrer for failure to

16  state a cause of action."  Id. at 1239 (fn. omitted).

17          Consistently, federal courts require compliance with the Act for pendant state law claims that

18  seek damages against state public employees or entities.  Willis v. Reddin, 418 F.2d 702, 704 (9th

19  Cir.1969); Mangold v. California Pub.  Util. Comm'n, 67 F.3d 1470, 1477 (9th Cir.1995).  State tort

20  claims included in a federal action, filed pursuant to 42 U.S.C. § 1983, may proceed only if the claims

21  were first presented to the state in compliance with the claim presentation requirement.  Karim–Panahi

22  v. Los Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir.1988); Butler v. Los Angeles County, 617

23  F.Supp.2d 994, 1001 (C.D.Cal.2008).

24          To be timely, a claim must be presented to the Board "not later than six months after the

25  accrual of the cause of action."  Cal. Govt. Code § 911.2.  Should a claimant miss this deadline, the

26  claimant may file a written application for leave to file a late claim, within a year after the accrual of

27  the cause of action.  Cal. Govt. Code § 911.4.  If the Board denies the application, the notice of denial

28  must include a warning to the claimant that no court action may be brought on the claim unless the

1    claimant first files a petition with the appropriate court requesting relief from the claim presentation

2    requirement, and obtains a court order granting such relief.  Cal. Govt. Code § 911.8.  Such a request

3    must be filed in the superior court where the trial for such an action would occur.  If it is filed in the

4    incorrect court, the action shall be transferred to the proper court.  Cal. Gov. Code § 946.6(a).  Failure

5    to obtain such relief bars any suit on the claim.

6            2.      Discussion

7                    a.      *Events Occurring Prior to July 15, 2011*

8            Plaintiff concedes that he did not timely file this action for events occurring between July 2,

9    2011, and July 15, 2011.  Plaintiff filed a claim with the Board alleging denial of sufficient calories for

10   the time period July 1, 2011, through July 15, 2011.  The Board denied the claim on August 18, 2011,

11   and Plaintiff concedes that this action was not filed within the six months after the denial.  Rivera

12   Decl. Ex. 1.  Accordingly, the state law claims related to events occurring between July 1, 2011, and

13   July 15, 2011, have not met the presentation requirement.

14                   b.      *Events Occurring After July 15, 2011*

15           Defendants contend that Plaintiff filed a total of three claims for events occurring between July

16   1, 2011, and May 15, 2013.  One claim, discussed above, dealt with issues occurring between July 1,

17   2011, and July 15, 2011, and is no longer an issue.  Defendants point to two other claims, each filed on

18   March 5, 2013, that do not pertain to the issues involved in this action.[4]

19           In his opposition, Plaintiff does not argue that any of the three cited claims met the

20   presentation requirements for the events in this action.  Instead, he points to two claims, filed on

21   January 1, 2012, as meeting the requirement for all events after July 15, 2011.

22           The first, according to Plaintiff, was placed in a sealed envelope and given to prison officials

23   for mailing to the Board on January 1, 2012.  The claim alleged that Defendant Kernan was told about

24   the denial of food, and rather than intervening, he issued a memorandum on September 27, 2011, that

25   threatened disciplinary measures for participation in a hunger strike.  The claim was signed by

26   Plaintiff on January 1, 2012.  Pl.'s Decl. ¶¶ 14-15, Ex. K.

27

28   [4] One claim deals with denial of access to the courts, and the other relates to Plaintiff's Hepatitis C treatment.  Rivera Decl. Exs. 2-3.

13

1    Plaintiff alleges that the second claim, signed by him on January 1, 2012, alleged that between

2 August 1, 2011, and October 15, 2011, Corcoran staff discontinued and/or failed to increase his liquid

3 diet and discharged him back to his cell, where his food continued to be withheld pursuant to a

4 misinterpretation of Operating Procedure 1051.  Plaintiff gave this claim to prison staff to mail on

5 January 1, 2012.  Pl.'s Decl. ¶ 17-18, Ex. L

6    Plaintiff contends that the Board did not respond to either of these claims and, consequently,

7 on or about February 16, 2012, the claims were deemed denied.  Cal. Gov. Code § 912.4(c) (providing

8 that if the Board fails or refuses to act on a claim within 45 days, it is deemed rejected on the last day

9 of the 45-day period).  As Plaintiff filed this action within six months of February 16, 2012, he

10 contends that the claim presentation requirement has been met for the issues in these two claims.

11    In opposition, Defendants question Plaintiff's evidence, noting that neither claim bears the

12 Government Claims Program stamp indicating that the Board received them.  Defendants also argue

13 that Plaintiff failed to present any documents from the Board indicating that the Board received these

14 claims or acted upon them.  Defendants therefore conclude that Plaintiff has failed to rebut their

15 evidence showing that Plaintiff failed to satisfy the Act's presentation requirements for all state law

16 claims.

17    Contrary to Defendants' belief, however, it is not sufficient to simply argue that Plaintiff is not

18 telling the truth.  Plaintiff submitted a declaration, signed under the penalty of perjury, that he

19 submitted timely claims and the Board did not respond.  The failure to respond triggered the six month

20 limitations period, and he filed this action within that time frame.  The applicable statute deems a

21 claim denied in exactly these circumstances.  Cal. Gov. Code § 912.4(c).  Certainly, a "failure to act"

22 could include a situation where the claims were not received, thus preventing any type of evidence that

23 the Board received the claim.  While Plaintiff's assertion that he did not receive a response on *two*

24 claims seems dubious, Defendants have not presented evidence to contradict his statements and the

25 Court cannot decide Plaintiff's credibility on a motion to dismiss.

26    Accordingly, the motion to dismiss state law claims relating to events after July 15, 2011,

27 should be denied without prejudice.

28

1    **E.        FINDINGS AND RECOMMENDATIONS**

2        Based on the above, the Court recommends that Defendants' Motion to Dismiss be GRANTED

3    IN PART and DENIED IN PART WITHOUT PREJUDICE.  The Court finds that all state law claims

4    relating to events prior to July 15, 2011 should be DISMISSED.

5        These Findings and Recommendations will be submitted to the United States District Judge

6    assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days**

7    after being served with these Findings and Recommendations, a party may file written objections with

8    the Court. The document should be captioned "Objections to Magistrate Judge's Findings and

9    Recommendations."  Replies may be filed within fourteen (14) days of the objections.  The parties are

10   advised that failure to file objections within the specified time may waive the right to appeal the

11   District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

12

13   IT IS SO ORDERED.

14       Dated:    **October 31, 2013**                    /s/ *Dennis L. Beck*
15                                              UNITED STATES MAGISTRATE JUDGE

15