1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **EASTERN DISTRICT OF CALIFORNIA**

10

11  BRYAN E. RANSOM,                          )   Case No.: 1:12cv01343 AWI DLB (PC)
                                               )
12               Plaintiff,                    )   FINDINGS AND RECOMMENDATIONS
                                               )   REGARDING DEFENDANTS' MOTION FOR
13        v.                                   )   PARTIAL SUMMARY JUDGMENT
                                               )   (Document 95)
14  AGUIRRE, et al.,                           )
                                               )
15               Defendants.                   )   THIRTY-DAY OBJECTION DEADLINE
                                               )
16  _____   )

17          Plaintiff Bryan E. Ransom ("Plaintiff") is a state prisoner proceeding pro se in this civil rights

18  action.  Defendants paid the filing fee and removed the action to this Court on August 16, 2012.

19          On December 30, 2014, Defendants filed a motion for partial summary judgment based on

20  Plaintiff's failure to exhaust his administrative remedies.[1]  Plaintiff filed his opposition on February

21  23, 2015, and Defendants filed a reply on March 3, 2015.  The motion is deemed submitted pursuant

22  to Local Rule 230(l).

23  **A.     PROCEDURAL HISTORY**

24          Plaintiff initially filed this action in the Kings County Superior Court on July 26, 2012.

25  Defendants Aguirre, Alanis, Messick, Clark, Cortez, Kernan, Mariscal, Moon, Perez, Singh, Ulit,

26  Vallejo, Vogel, Wang, and Wooden removed the action to this Court August 16, 2012.

27  _____
28  [1] Defendants' motion included the requirements for opposing summary judgment.

On January 31, 2013, the Court screened Plaintiff's complaint and ordered him to either file an amended complaint or notify the Court of his willingness to proceed on the cognizable claims. Plaintiff filed a First Amended Complaint on March 6, 2013.

On April 3, 2013, the Court issued Findings and Recommendations that this action proceed on claims under the First and Eighth Amendment, as well as state law claims.  The Findings and Recommendations were adopted on May 8, 2013.

On June 17, 2013, Defendants filed an unenumerated Rule 12(b) motion to dismiss based on Plaintiff's failure to exhaust.  On November 1, 2013, the Court issued Findings and Recommendations to grant the in part and deny the motion in part.  The Court adopted the Findings and Recommendations on March 12, 2014, and all state law claims relating to events prior to July 15, 2011, were dismissed.  The Court denied the motion on issues for which it found credibility issues.

In their objections, Defendants requested an evidentiary hearing as to whether Plaintiff submitted two inmate appeals and mailed two government claims.  The Court ordered Defendants to inform the Court whether they wanted to renew their motion to dismiss on these issues.

On April 4, 2014, Defendants indicated that they wished to renew their motion.  However, on April 10, 2014, after the Ninth Circuit's decision in Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014), the Court ordered Defendants to submit a summary judgment motion on the remaining issues.

Defendants now bring this motion for partial summary judgment addressing Plaintiff's claims that he submitted two inmate appeals and mailed two government claims.

**B.    SUMMARY OF PLAINTIFF'S ALLEGATIONS**[2]

Plaintiff is confined in the Security Housing Unit at Corcoran State Prison ("CSP"), where the events at issue in this action occurred.

Plaintiff's First Amended Complaint relates to two solid food hunger strikes in 2011- one occurring from July 1, 2011, through July 19, 2011, and the other occurring from October 2, 2011, through October 15, 2011.

---

[2] Defendants Hubbard, Hugh, Lopez, Lovelady, Macias, Martines, Watkins, Weaver, Gibson and Hieng were dismissed from this action in January 2014 for Plaintiff's failure to effectuate service.

Plaintiff contends that on July 1, 2011, he notified Defendants Vogel, Perez, Marsical, Cortez, Martines, Vellejo, Singh, Aguirre and Wooden that he was a participant in a statewide indefinite prisoner solid-food hunger strike.  Plaintiff alleges that from July 2, 2011, through July 19, 2011, in retaliation for his hunger strike, Defendants Vogel, Perez, Marsical, Cortez, Martines, Vellejo, Singh, Aguirre and Wooden implemented and/or enforced a policy and practice that prohibited inmates who were on any type of hunger strike from receiving their daily state issue bag lunches and meal trays.  This policy deprived Plaintiff of his daily state issue of "non-solid" food items for eighteen consecutive days.

Plaintiff states that he asked Defendants why they were withholding his food, and they told him that they were following the orders of their supervisors, Vogel and Perez.  Plaintiff asked Defendants Vogel and Perez why they ordered staff to withhold food, and they told Plaintiff that they do not make any distinction between any categories of hunger strikes, and that if they allowed staff to give Plaintiff non-solid food, Plaintiff would maintain his hunger strike indefinitely.  Plaintiff alleges that the orders of Vogel and Perez have caused excessive pain and weight loss.

On July 7, 2011, Plaintiff was transported to the emergency room at CSP.  He told Defendant Ulit that he was on a solid food hunger strike and that staff had been withholding his food trays since July 2, 2011.  Defendant Ulit failed to intervene by giving Plaintiff food and instead had him escorted back to his cell.

On July 19, 2011, Plaintiff was transported to CSP's emergency room for a medical evaluation. Plaintiff told Defendant Ulit that he had been on a hunger strike since July 1, 2011, and that for the last eighteen days, prison officials had been withholding his daily state issue of non-solid food items. Defendant Ulit found Plaintiff to be dehydrated and malnourished and admitted him to CSP's hospital for monitoring and IV fluids.  He ordered that Plaintiff be placed on a 1,125 calorie liquid diet of "Nutren."  This was below the minimum daily requirement of 1,800 calories and subsequently caused Plaintiff great pain and continued weight loss.

Two hours after his admittance, a team of outside lawyers visited Plaintiff to ask about the withholding of food.  The following day, Defendant Clark interviewed Plaintiff and wanted to know what he told the lawyers.  He told Defendant Clark that the lawyers were investigating the withholding

3

of food and he affirmed their allegations.  Defendant Clark told Plaintiff that they were not going to let him use the medical facility to "grand stand" his hungers strike and that if he wanted food, all he had to do was stop the hunger strike.  When Plaintiff refused, Defendant Clark told him that he would make sure he was discharged from the hospital.

Between July 19, 2011 and August 1, 2011, Plaintiff's weight continued to decline due to his deficient caloric diet.  Each day, he asked Defendants Moon and Clark to increase his Nutren to 1,800 calories to stop his hunger pains and weight loss.  They refused, stating that they did not want to accommodate his hunger strike.

On July 27, 2011, the "Prison Law Office" inquired with CDCR headquarters about Plaintiff's allegations of food withholding.  CDCR agreed that the prisoners on a solid-food hunger strike would not be denied liquids.  However, rather than intervening, CDCR and Defendant Kernan elected to issue a memorandum to all CDCR prisoners threatening that any participation in the hunger strike would be considered disruptive behavior and met with disciplinary action.

On August 1, 2011, Defendant Clark told Plaintiff that he and Defendant Wang decided to discontinue his Nutren and kick him out of the hospital as a deterrent to his continued hunger strike.  Defendant Clark also stated that the Nutren diet was too expensive and set a bad precedent.  On August 2, 2011, Defendant Clark discontinued his Nutren, discharged him and returned him to the SHU, despite knowing that staff would continue to withhold his food.

On August 3, 2011, Defendants Alanis and Messick withheld his food for three more days, until Plaintiff stopped his hunger strike.

Plaintiff stopped his hunger strike when he believed that Defendant Kernan would consider the strikers' demands.  However, on October 2, 2011, Plaintiff resumed his solid food hunger strike.  In retaliation, Defendants Alanis and Messick withheld Plaintiff's food for thirteen days.  Defendants Alanis and Messick told Plaintiff that until they received orders from superior officers, they would withhold food.

Between October 6, 2011, and October 14, 2011, Plaintiff explained to Defendants Moon and Ulit that prison officials had been withholding food since October 2, 2011.  They refused to provide Plaintiff with a substitute medical diet and repeatedly returned him to his cell without assistance.

4

Consequently, on October 15, 2011, Plaintiff was forced to temporarily discontinue his hunger strike.  He alleges that Defendants Alanis, Messick, Moon and Ulit had a responsibility to insure that Plaintiff was provided with adequate nutrition, but failed to do so.

Based on these allegations, the Court found the following cognizable claims: (1) retaliation in violation of the First Amendment; (2) inhumane conditions of confinement in violation of the Eighth Amendment; (3) deliberate indifference to a serious medical need in violation of the Eighth Amendment; (4) negligence; (5) intentional infliction of emotional distress; and (6) medical malpractice.

**C.   LEGAL STANDARD**

The failure to exhaust is subject to a motion for summary judgment in which the court may look beyond the pleadings.  Albino v. Baca, 747 F.3d 1162, 1170 (9th Cir. 2014).  If the Court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice.  Jones, 549 U.S. at 223-24; Lira v. Herrera, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

Defendants bear the burden of proof in moving for summary judgment for failure to exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172.  If Defendants carry this burden, the burden of production shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  Id.  This requires Plaintiff to "show more than the mere existence of a scintilla of evidence."  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).  "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56."  Albino, 747 F.3d at 1166.  However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts."  Id.

**D.   UNDISPUTED FACTS**

Between July 1, 2011, and June 26, 2012, Plaintiff submitted two non-healthcare related appeals that the Office of Appeals that were accepted for Third Level Review.  Briggs Decl. ¶ 8.  One

of those appeals, Log Number 11-1820, was signed by Plaintiff on July 11, 2011, and was denied at the Third Level on March 6, 2012.[3]  Briggs Decl. ¶ 9, Ex. 1.

Between July 1, 2011, and June 26, 2012, Plaintiff did not obtain any Third Level appeal decisions regarding healthcare issues.  Robinson Decl. ¶¶7-8.  During this time frame, Plaintiff submitted five healthcare appeals that were accepted for First Level Review.[4]  Williams Decl. ¶ 4.  These appeals were cancelled, rejected, screened-out, or denied at the First Level.  Williams Decl. ¶¶ 4, Ex. 1.

Plaintiff filed at least four government claims to the Victims Compensation and Government Claims Board ("Board") between June 1, 2011, and May 15, 2013.  At least three claims alleged an incident occurring within the relevant time frame.  Rivera Decl. ¶ 6.  Claim G598369 alleged that prison medical staff refused to provide him with enough calories during his hunger strike, and that prison officials deprived him of his liquid diet.  The Board denied the claim on August 26, 2011. Rivera Decl., Ex. 1.

During 2011, inmates housed in Facility 4A, a Security Housing Unit, who wished to send mail would place outgoing mail near the corner of their door.  Sexton Decl. ¶ 4.  If the inmate wanted to send mail outside of the institution, they would include a regular envelope with their outgoing mail.  If mail would be sent within the institution, the inmate would submit their mail using an interoffice envelope.  Sexton Decl. ¶ 5.  An officer working Third Watch (2:00 p.m. to 10:00 p.m.) would collect outgoing mail, place it inside a bag, and drop the bag off at the Facility 4A control booth.  Sexton Decl. ¶ 6.  A First Watch (10:00 p.m. to 6:00 a.m.) officer would then retrieve and sort the mail, and it would be picked up the following morning for delivery to the mail room.  Sexton Decl. ¶ 7.  The mail room sorts the mail according to destination, i.e., interoffice or outside mail.  Sexton Decl. ¶ 8.

During 2011, inmates had three ways to submit a grievance.  They could give it to a building officer, who would then place the grievance in a lockbox located in the rotunda.  The inmate could also place the grievance near the cell door, like normal mail, and the Third Watch officer who

---

[3] This appeal exhausted Plaintiff's constitutional claims for events prior to July 11, 2011.

[4] Plaintiff attempts to dispute this by citing the two appeals that he contends he submitted, but for which he never received a response.  Defendants' fact, however, speaks only to appeals *accepted* for First Level Review.  The fact is undisputed.

collected the mail would place the grievance in the lockbox.  Finally, the inmate could drop the grievance into the lockbox whenever he left his cell, such as for yard time, programming, medical appointments, etc.  Sexton Decl. ¶ 9.  The housing sergeant retrieves the grievances from the lockbox and delivers them to a central location near the appeals office, where they are further processed. Sexton Decl. ¶ 10.  The lockbox system was created to address allegations that staff complaints were not being processed because they were being discarded by institution staff.  Sexton Decl. ¶ 11.

Staff may not interfere with inmate mail or hinder their ability to file a grievance.  Sexton Decl. ¶ 13.  Inmate complaints in the Security Housing Unit regarding mail and staff complaint processing are fairly common and regularly investigated.  Sexton Decl. ¶ 14.  Acting Chief Deputy Warden Sexton does not recall any substantiated investigations stemming from allegations by Plaintiff about processing mail or tampering with staff complaints in Facility 4A.  Sexton Decl. ¶ 16.

A record of incoming and outgoing legal mail is logged on an inmate's CDC Form 119, Mail Record.[5]  Bryant Decl. ¶ 4.  The mailroom received and processed three pieces of legal mail addressed to the Board.  Bryant Decl. ¶ 6, Ex. 1.

In his declaration, Plaintiff states that he submitted two grievances for which he never received a response.  Pl.'s Decl. ¶¶ 2-5.  Plaintiff contends that on August 17, 2011, he submitted an appeal to the Third Watch building officer for processing.  This appeal alleged that medical staff had discontinued his prescribed liquid diet and discharged him from the prison hospital back to the Security Housing Unit, where officials continued to withhold his food based on a misinterpretation of Operating Procedure 1051.  Pl.'s Decl. ¶ 2, Ex. 1. He never received a response.  Pl.'s Decl. ¶ 3.

He further contends that on October 22, 2011, he submitted an appeal to the Third Watch building officer for processing.  The appeal alleged that Defendant Kernan was advised that officials were withholding food, but instead of intervening, he issued a memo on September 27, 2011, threatening disciplinary measures against prisoners protesting via hunger strikes.  Pl.'s Decl. ¶ 4, Ex. B.  He never received a response.  Pl.'s Decl. ¶ 5.

---

[5] Plaintiff disputes this by citing a Special Report issued by the Office of the Inspector General in September 2011 regarding the loss and/or destruction of inmate appeals.  Pl.'s Decl. ¶ 11, Ex. F.  However, Defendants' fact is about the act of logging mail, and Plaintiff's citation does not dispute this fact.

On September 28, 2011, the Office of the Inspector General issued a Special Report placing CDCR on notice that allegations of loss and destruction of inmate appeals were prevalent throughout the system and recommended that CDCR implement an "accountability" feature within the appeal form.  CDCR declined on the ground of inconvenience.  Pl.'s Decl. ¶ 11, Ex. F.[6]

As to the government claims, Plaintiff states that on January 1, 2012, he placed his government claim form in a sealed, stamped envelope addressed to the Board, and gave it to the Third Watch building officer to mail to the Board.  Pl.'s Decl. ¶ 12, Ex. G.  The claim alleged that Defendant Kernan was advised that officials were withholding food, but instead of intervening, he issued a memo on September 27, 2011, threatening disciplinary measures against prisoners protesting via hunger strikes.  Pl.'s Decl. ¶ 12, Ex. G.  He never received a response.  Pl.'s Decl. ¶ 14.

Plaintiff further states that on January 1, 2012, he placed another government claim form in a sealed, stamped envelope addressed to the Board, and gave it to the Third Watch building officer to mail to the Board.  Pl.'s Decl. ¶ 15, Ex. H.  The claim alleged that prison officials discontinued and/or failed to increase his prescribed liquid diet and instead discharged him back to the SHU, where prison officials continued to withhold food due to their misinterpretation of Operational Policy 1051.  Pl.'s Decl. ¶ 16.  He did not receive a response.  Pl.'s Decl. ¶ 17.

On July 22, 2012, the Maoist International Movement United Struggle from Within sent Plaintiff a form letter and petition form indicating that they were leading a campaign to petition the Director of CDCR regarding problems with the appeals process.  Pl.'s Decl. ¶ 6, Ex. C.  Plaintiff sent petitions to the Director of CDCR on July 28, 2012, and referenced the August 17 and October 22, 2011, appeals for which he never received responses.  Pl.'s Decl. ¶¶ 7-8, Ex. D and E.[7]  The petitions

---

[6] Defendants object to the Special Report, attached as Exhibit F to Plaintiff's declaration, as irrelevant.  However, given the Court's duty to determine whether there exists a genuine dispute as to any material fact, an independent objection to evidence as irrelevant is unnecessary.  E.g., Carden v. Chenega Sec. & Protections Servs., LLC, 2011 WL 1807384, at *3 (E.D.Cal. 2011); Arias v. McHugh, 2010 WL 2511175, at *6 (E.D.Cal. 2010).  The objection is disregarded.

[7] Defendants object to these petitions as irrelevant and containing hearsay.  Defendants' relevancy objections are disregarded, for the reasons noted above.  As to hearsay, Defendants argue that Plaintiff is using the contents of the letter to prove the truth of the matters asserted, i.e., "that he was being harassed, retaliated against, and there was a conspiracy to refuse to respond to his grievances."  ECF No. 102-3, at 2-3.  Defendants are correct that Plaintiff cannot use the petitions to show (1) he submitted the grievances; or (2) that he was harassed and retaliated against.  He can, however, use the

were copied to the Prison Law Office, Office of Internal Affairs, Chief Ombudsman, the United States Department of Justice and the Office of Inspector General.  Pl.'s Decl. ¶ 9.

**E.**   **DISCUSSION**

Defendants concede that Plaintiff has exhausted his administrative remedies for his allegations related to events occurring prior July 11, 2011.  Rather, Defendants argue that (1) Plaintiff has not exhausted the remaining federal claims; and (2) has not complied with the California Government Claims Act (the "Act").

1.   Exhaustion of Constitutional Claims

a.   *Appeals Process*

The California Department of Corrections and Rehabilitation ("CDCR") has an administrative grievance system for prisoners to appeal any departmental decision, action, condition, or policy having an adverse effect on prisoners' welfare.  Cal. Code Regs. tit. 15, § 3084.1.  During the relevant times, a prisoner must proceed through an initial informal level and three formal levels of review, culminating in a third-level decision.  Cal. Code Regs. tit. 15, § 3084.5.  In order to satisfy section 1997e(a), California state prisoners are required to use this process to exhaust their claims prior to filing suit.  Woodford v. Ngo, 548 U.S. 81, 85-86, 126 S.Ct. 2378 (2006); McKinney, 311 F.3d at 1199-1201.

b.   *Analysis*

It is undisputed that Plaintiff has not received a decision from the Third Level of Review for allegations occurring after July 11, 2011.  Defendants have therefore carried their burden of demonstrating Plaintiff's failure to exhaust, and the burden now shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  Albino, 747 F.3d at 1166.

Plaintiff contends that he submitted two appeals to the Third Watch building officer.  On August 17, 2011, he contends that he submitted an appeal alleging that on July 29, 2011, he informed Warden Hubbard that medical staff refused to increase his liquid diet, and that officials were

---

petitions to show a prior consistent statement- that he had complained about the grievance procedure prior to it becoming an issue here. Fed. R. Evid. 801(d)(1)(B).  The objection is therefore sustained in part.

misinterpreting Operating Procedure 1051.  On October 22, 2011, Plaintiff contends that he submitted an appeal to the Third Watch building officer alleging that Defendant Kernan had been placed on notice that prison officials were withholding food.  Instead of intervening, Plaintiff alleged that Defendant Kernan issued a memorandum threatening to take disciplinary measures against hunger strike participants.

Plaintiff states that he never received a response to either appeal.  He argues that there are no grievance rules instructing a prisoner on what actions to take when he does not receive a response, and therefore the exhaustion requirement is satisfied for these claims.  Pl.'s Decl. ¶¶ 3, 5.

Defendants dispute Plaintiff's account, and argue that even if he submitted these two appeals, administrative remedies remained available and he made no attempts to utilize them.  Defendants argue that Plaintiff was familiar with the appeals system, and was required take additional and appropriate steps to exhaust his issues.  For example, Defendants argue that Plaintiff could have submitted another grievance if had issues with processing, or submitted a CDCR Form 22 (request for interview) to discuss the issue with staff and/or appeals coordinators.

Given the factual dispute, the issue therefore becomes whether, viewing the facts in Plaintiff's favor, his attempt to exhaust was sufficient.  If Plaintiff submitted the two appeals as he states, but this was not sufficient to meet the exhaustion requirement, the analysis ends and Defendants are entitled to summary judgment.

Defendants state that it was "incumbent" on Plaintiff to take additional action to address his issue with the processing of grievances.  ECF No. 102, at 3.  Defendants therefore contend that to satisfy exhaustion on the issues before the Court, Plaintiff was required to submit an appeal and/or request for interview on the alleged non-responsiveness.  They argue that Plaintiff made no such efforts.

The Court addressed this issue in the ruling on Defendants' prior motion, explaining that his failure to further act is not sufficient to meet Defendants' burden of showing that pertinent relief remained available.  Brown v. Valoff, 422 F.3d 926, 930 (9th Cir. 2005).  There is no rule or regulation *requiring* Plaintiff to take further action.  Once Plaintiff indicates that he has done what is required, Defendants cannot defeat his statements simply by contending that he should have done

more.  See also Cotton v. Cate, 2015 WL 1246114, *3 (N.D. Cal. 2015) (citing Williams v. Paramo, 775 F.3d 1182, 1192 (9th Cir.2015).  As long as Plaintiff complied with the critical procedural rules, which he attests he did, he is not required to take additional steps to ensure that his appeal reaches its destination.

Defendants have presented no reason to alter the Court's prior ruling.  In a situation such as this, where the parties offer differing versions of events based on competing declarations, the issue is one of witness credibility and an evidentiary hearing is necessary.  The Court therefore recommends that the motion for partial summary judgment be denied, pending an evidentiary hearing.

**2.**  California Government Tort Claims Act

a.  *Claim Presentation Requirement*

Under the California Government Claims Act (the "Act"), set forth in California Government Code sections 810 *et seq*., a plaintiff may not bring a suit for monetary damages against a public employee or entity unless the plaintiff first presented the claim to the California Victim Compensation and Government Claims Board (the "Board"), and the Board acted on the claim, or the time for doing so expired.  "The Tort Claims Act requires that any civil complaint for money or damages first be presented to and rejected by the pertinent public entity."  Munoz v. California, 33 Cal.App.4th 1767, 1776 (1995).  The purpose of this requirement is "to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation."  City of San Jose v. Superior Court, 12 Cal.3d 447, 455 (1974) (citations omitted).  Compliance with this "claim presentation requirement" constitutes an element of a cause of action for damages against a public entity or official.  State v. Superior Court (Bodde), 32 Cal.4th 1234, 1244 (2004).  Thus, in the state courts, "failure to allege facts demonstrating or excusing compliance with the claim presentation requirement subjects a claim against a public entity to a demurrer for failure to state a cause of action."  Id. at 1239 (fn. omitted).

Consistently, federal courts require compliance with the Act for pendant state law claims that seek damages against state public employees or entities.  Willis v. Reddin, 418 F.2d 702, 704 (9th Cir.1969); Mangold v. California Pub.  Util. Comm'n, 67 F.3d 1470, 1477 (9th Cir.1995).  State tort claims included in a federal action, filed pursuant to 42 U.S.C. § 1983, may proceed only if the claims

were first presented to the state in compliance with the claim presentation requirement.  Karim–Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir.1988); Butler v. Los Angeles County, 617 F.Supp.2d 994, 1001 (C.D.Cal.2008).

To be timely, a claim must be presented to the Board "not later than six months after the accrual of the cause of action."  Cal. Govt. Code § 911.2.  Should a claimant miss this deadline, the claimant may file a written application for leave to file a late claim, within a year after the accrual of the cause of action.  Cal. Govt. Code § 911.4.  If the Board denies the application, the notice of denial must include a warning to the claimant that no court action may be brought on the claim unless the claimant first files a petition with the appropriate court requesting relief from the claim presentation requirement, and obtains a court order granting such relief.  Cal. Govt. Code § 911.8.  Such a request must be filed in the superior court where the trial for such an action would occur.  If it is filed in the incorrect court, the action shall be transferred to the proper court.  Cal. Gov. Code § 946.6(a).  Failure to obtain such relief bars any suit on the claim.

b.    *Analysis*

It is undisputed that Plaintiff did not receive a denial from the Board on any claims remaining in this action.[8]  Defendants have therefore carried their burden of demonstrating Plaintiff's failure to exhaust, and the burden now shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  Albino, 747 F.3d at 1166.

Plaintiff points to two claims, both filed on January 1, 2012, as meeting the requirement for all events after July 15, 2011.  The first, according to Plaintiff, was placed in a sealed envelope and given to prison officials for mailing to the Board on January 1, 2012.  The claim alleged that Defendant Kernan was told about the denial of food, and rather than intervening, he issued a memorandum on September 27, 2011, that threatened disciplinary measures for participation in a hunger strike.  The claim was signed by Plaintiff on January 1, 2012.

---

[8] In the Court's ruling on Defendants' prior exhaustion challenge, the Court dismissed all state law claims related to events occurring between July 1, 2011, and July 15, 2011.  Although Plaintiff presented these claims to the Board and received a denial, he conceded that he did not file this action within six months of the denial.

1    Plaintiff alleges that the second claim, signed by him on January 1, 2012, alleged that between

2    August 1, 2011, and October 15, 2011, Corcoran staff discontinued and/or failed to increase his liquid

3    diet and discharged him back to his cell, where his food continued to be withheld pursuant to a

4    misinterpretation of Operating Procedure 1051.  Plaintiff gave this claim to prison staff to mail on

5    January 1, 2012.

6    Plaintiff contends that the Board did not respond to either of these claims and, consequently,

7    on or about February 16, 2012, the claims were deemed denied.  Cal. Gov. Code § 912.4(c) (providing

8    that if the Board fails or refuses to act on a claim within 45 days, it is deemed rejected on the last day

9    of the 45-day period).  As Plaintiff filed this action within six months of February 16, 2012, he

10   contends that the claim presentation requirement has been met for the issues in these two claims.

11   Defendants again dispute Plaintiff's account, and argue that he has not presented evidence that

12   these two claims were actually mailed.  The Court addressed Defendants' argument in the prior

13   Findings and Recommendations, explaining that Defendants cannot simply dispute Plaintiff's account.

14   Plaintiff submitted a declaration, signed under the penalty of perjury, that he submitted timely claims

15   and the Board did not respond.  The failure to respond triggered the six month limitations period, and

16   he filed this action within that time frame.  The applicable statute deems a claim denied in exactly

17   these circumstances.  Cal. Gov. Code § 912.4(c).  Certainly, a "failure to act" could include a situation

18   where the claims were not received, thus preventing any type of evidence that the Board received the

19   claim.  While Plaintiff's assertion that he did not receive a response on *two* claims seems dubious, a

20   dispute of fact remains.

21   The Court therefore recommends that Defendants' motion for summary judgment be denied,

22   pending an evidentiary hearing.

23   **F.    FINDINGS AND RECOMMENDATIONS**

24   Based on the above, the Court recommends that Defendants' motion for partial summary

25   judgment be DENIED pending an evidentiary hearing.

26   These Findings and Recommendations will be submitted to the United States District Judge

27   assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days**

28   after being served with these Findings and Recommendations, a party may file written objections with

the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies may be filed within fourteen (14) days of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

    Dated:   **August 25, 2015**                              /s/ *Dennis L. Beck*
                                               UNITED STATES MAGISTRATE JUDGE

14