UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYAN E. RANSOM,<br><br>        Plaintiff,<br><br>   v.<br><br>AGUIRRE, et al.,<br><br>        Defendants. | Case No.: 1:12cv01343 DAD DLB (PC)<br><br>ORDER DENYING PLAINTIFF'S MOTION TO PLACE COURT ON NOTICE OF IMPROPER CONDUCT<br>(Document 119)<br><br>FINDINGS AND RECOMMENDATIONS FOLLOWING EVIDENTIARY HEARING ON EXHAUSTION OF ADMINISTRATIVE REMEDIES<br><br>THIRTY-DAY OBJECTION DEADLINE |

Plaintiff Bryan E. Ransom ("Plaintiff") is a state prisoner proceeding pro se in this civil rights action. Defendants paid the filing fee and removed the action to this Court on August 16, 2012.

The Court held an evidentiary hearing on the issue of exhaustion on December 16, 2015. Plaintiff appeared on his own behalf. David Goodwin and Misha Igra appeared on behalf of Defendants.

///

///

///

///

The Court now issues these Findings and Recommendations on the issue of whether Plaintiff exhausted the available administrative remedies for (1) his federal claims after July 11, 2011; and (2) his remaining state law claims.[1]

## A. PROCEDURAL HISTORY

Plaintiff initially filed this action in the Kings County Superior Court on July 26, 2012. Defendants Aguirre, Alanis, Messick, Clark, Cortez, Kernan, Mariscal, Moon, Perez, Singh, Ulit, Vallejo, Vogel, Wang, and Wooden removed the action to this Court August 16, 2012.

On January 31, 2013, the Court screened Plaintiff's complaint and ordered him to either file an amended complaint or notify the Court of his willingness to proceed on the cognizable claims. Plaintiff filed a First Amended Complaint on March 6, 2013.

On April 3, 2013, the Court issued Findings and Recommendations that this action proceed on claims under the First and Eighth Amendment, as well as state law claims. The Findings and Recommendations were adopted on May 8, 2013.

On June 17, 2013, Defendants filed an unenumerated Rule 12(b) motion to dismiss based on Plaintiff's failure to exhaust. On November 1, 2013, the Court issued Findings and Recommendations to grant the motion in part and deny the motion in part. The Court adopted the Findings and Recommendations on March 12, 2014, and all state law claims relating to events prior to July 15, 2011, were dismissed. The Court denied the motion on claims for which it found credibility issues.

In their objections, Defendants requested an evidentiary hearing as to whether Plaintiff submitted two inmate appeals and mailed two claims pursuant to the California Government Tort Claims Act. The Court ordered Defendants to inform the Court whether they wanted to renew their motion to dismiss on these issues.

On April 4, 2014, Defendants indicated that they wished to renew their motion. However, on April 10, 2014, after the Ninth Circuit's decision in Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014), the Court ordered Defendants to submit a summary judgment motion on the remaining issues.

///

---

[1] The exhaustion challenge does not relate to Plaintiff's federal claim for events occurring prior to July 11, 2011.

1   On December 30, 2014, Defendants filed their motion for partial summary judgment
2   addressing Plaintiff's claims that he submitted two inmate appeals and mailed two government claims.
3   The Court issued Findings and Recommendations on August 25, 2015, recommending that the motion
4   be denied pending an evidentiary hearing.  The Findings and Recommendations were adopted on
5   September 30, 2015.

6   **B.   EVIDENTIARY HEARING**

7   The Court held an evidentiary hearing on December 16, 2015.  The hearing was limited to the
8   issues of whether Plaintiff (1) filed two inmate grievances, dated August 17, 2011, and October 22,
9   2011; and (2) submitted two claims pursuant to the California Government Tort Claims Act on
10  January 1, 2012.

11  After hearing testimony, the parties agreed that Plaintiff would search his legal property, while
12  supervised, in an attempt to locate his rough drafts of the 602s at issue.

13  The Court also permitted Plaintiff to submit an affidavit with additional evidence, if any, as
14  well a request to call witnesses.  The Court explained that any motion to call witnesses must include a
15  declaration explaining why Plaintiff did not timely request witnesses prior to the hearing.[2]

16  Plaintiff did not submit a motion to call witnesses.

17  On December 22, 2015, David C. Goodman filed a declaration with an attached statement from
18  Correctional Officer P. Patterson.  Goodwin Decl. ¶ 6, Ex. A.  The statement, signed by both Officer
19  Patterson and Plaintiff, detailed Plaintiff's search of his legal property on December 22, 2015.
20  Plaintiff was not able to locate the rough drafts at issue.

21  Pursuant to the subsequent briefing schedule set for final arguments, Defendants submitted
22  their final briefing on February 18, 2016.  Plaintiff submitted his final briefing on March 4, 2016.

23  **C.   PLAINTIFF'S MOTION REGARDING ALLEGED IMPROPER CONDUCT**

24  On January 15, 2016, Plaintiff filed a motion "to place the Court on notice of improper
25  conduct."  ECF No. 119, at 1.  He contends that Defendants and/or prison officials did not comply

---

[2] According to the December 3, 2015, statement submitted by the parties, Plaintiff informed Defendants' counsel that he did not intend to call any witnesses other than himself at the hearing.  ECF No. 108, at 1.

3

1   with this Court's orders relating to the search of his property.  Plaintiff believes that his property was
2   held in an unsecure location for over five days before he could search it for the rough drafts at issue.
3   He also contends that prison officials searched his property, prior to his own search.  Plaintiff suggests
4   that this "severely compromised the integrity of the Court's order and [his] search for the August and
5   October 2011, drafts."  ECF No. 119, at 8.

6         Plaintiff's motion is based on his interpretation of the Court's order relating to the search.
7   Plaintiff suggests that the Court ordered that his legal property be immediately removed from his cell
8   and the law library, and then held in isolation.  Plaintiff also contends that the Court ordered that he be
9   given four or five days to produce the drafts, under the supervision of prisoner officials, and that the
10  "allotted five days" would commence upon Plaintiff's return to Corcoran.  ECF No. 119, at 3.

11        A review of the Court's discussion of the search during the hearing, however, does not support
12  Plaintiff's interpretation.  The Court indicated that Plaintiff's property from his cell should be
13  segregated, so that there would be no question as to whether Plaintiff wrote a draft and then added it to
14  his property.  ECF No. 123, at 181, 194, 195.  The property was to be moved "somewhere" until
15  Plaintiff could review it under supervision.  ECF No. 123, at 195.  Plaintiff then asked if he would
16  "have at least three or four days" to search through his property, and the Court indicated that this
17  length of time may be necessary to search through his documents.  ECF No. 123, at 196.

18        Therefore, the Court did not, as Plaintiff suggests, order that his property be held in isolation,
19  nor did the Court order that the search commence as soon as Plaintiff returned to Corcoran.[3]  The only
20  action that was immediately needed was for Plaintiff to identify where the documents might be so that
21  his property could be taken from his cell.  ECF No. 123, at 194.

22        As to the length of time permitted by the Court, it is somewhat irrelevant given Plaintiff's
23  desire to only search certain portions of his property.  Although prison officials gathered six bags and
24  seven boxes of legal documents, Plaintiff only wanted to look in the places where the drafts would
25  most likely be.  Plaintiff searched those areas, which amounted to about 10,000 sheets of paper.  The

---

[3] If Plaintiff wanted to search his property immediately upon his return, it appears that he was given more than one opportunity to so do, but declined.  Acevedo Decl. ¶¶ 5-9 (ECF No. 124-1, at 2).

4

search took about three and one-half hours. Plaintiff was not able to locate the documents. Goodwin Decl. ¶ 6, Ex. A.

Despite Plaintiff's complaints, the Court is satisfied that the correct procedures were followed, and that Plaintiff was given every opportunity to search for the rough drafts. Plaintiff has also failed to show that his documents were tampered with. Other than his speculation based on the fact that some of his documents were not right-side up, he presents no evidence to support his contention.[4]

Plaintiff's motion is therefore DENIED.

## D.  LEGAL STANDARD

The failure to exhaust is subject to a motion for summary judgment in which the court may look beyond the pleadings. Albino v. Baca, 747 F.3d 1162, 1170 (9th Cir. 2014). If the Court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice. Jones, 549 U.S. at 223-24; Lira v. Herrera, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

Defendants bear the burden of proof in moving for summary judgment for failure to exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172. If Defendants carry this burden, the burden of production shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)). "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." Albino, 747 F.3d at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id.

///

---

[4] Defendants submit the Declaration of Officer Patterson, dated February 16, 2016, in which Officer Patterson states that he did not "rifle through" Plaintiff's documents, and only searched through his property when Plaintiff was present. Patterson Decl. ¶ 8 (ECF No. 124-2, at 2). Defendants also submit the Declaration of J. Aceveo, who stated that he moved Plaintiff's property, but that he did not "rifle through" it. Acevedo Decl. ¶¶ 7, 13.

**E.  DISCUSSION**

    1.    <u>Federal Claims</u>

        a.    *Prior Findings*

There is no dispute that Plaintiff did not receive a decision from the Third Level of Review for allegations occurring after July 11, 2011.

The Court found a dispute of fact, however, as to whether Plaintiff submitted two appeals to the Third Watch building officer. Plaintiff maintained that he submitted an appeal on August 17, 2011, alleging that on July 29, 2011, he informed Warden Hubbard that medical staff refused to increase his liquid diet, and that officials were misinterpreting Operating Procedure 1051.

On October 22, 2011, Plaintiff stated that he submitted a second appeal to the Third Watch building officer alleging that Defendant Kernan had been placed on notice that prison officials were withholding food, but failed to intervene.

Plaintiff did not receive a response to either appeal.

        b.    *Findings After Evidentiary Hearing*[5]

After reviewing the testimony presented at the hearing and Plaintiff's subsequent failure to locate the rough drafts, the Court finds that Plaintiff's testimony that he filed grievances on August 17, 2011, and October 22, 2011, is not credible.

Plaintiff's initial testimony related to his alleged filing of these grievances mirrored his claims set forth in opposition to Defendants' exhaustion challenges. He testified that on August 17, 2011, while he was in his cell in 4A, he placed the appeal in a "U-Save-Em interdepartmental envelope," and wrote "to inmate appeals coordinator" on the envelope. ECF No. 123, at 15. He placed the envelope in his food tray slot during Third Watch, and eventually noticed that it was gone. ECF No. 123, at 16-

---

[5] In <u>Albino</u>, the Ninth Circuit held that "[i]f a motion for summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge, in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue. See <u>McNutt v. Gen. Motors Acceptance Corp.</u>, 298 U.S. 178, 188-190 (1936) (subject-matter jurisdiction); <u>Murphy v. Schneider Nat'l, Inc.</u>, 362 F.3d 1133, 1139-1140 (9th Cir. 2004) (venue); <u>Lake v. Lake</u>, 817 F.2d 1416, 1420 (9th Cir. 1987) (personal jurisdiction)." <u>Albino</u>, 747 F.3d at 1170-1171. In <u>McNutt</u>, the Court indicated it may "inquire into the facts as they really exist." <u>McNutt</u>, 298 U.S. at 184. In <u>Lake</u>, the Court stated it "has the discretion to evidence at a preliminary hearing in order to resolve any questions of credibility or fact." <u>Lake</u>, 817 F.2d at 1420.

17. He never heard anything else about it. ECF No. 123, at 17. He also said that he filed a second grievance in a similar manner. ECF No. 123, at 17, 27.

When Plaintiff did not get a response, he completed a petition related to lost grievances sent by an organization called the Maoist International Movement. He sent the petition to the Director of Corrections on July 28, 2012. ECF No. 123, at 18-19.

During cross-examination, Plaintiff testified that the copies of the two grievances at issue that he has relied on throughout this case were actual copies of the grievances he submitted. ECF No. 123, 24-29. However, after being presented with the fact that the copies he submitted were written on CDCR forms not in existence until 2012, Plaintiff admitted that he created the copies once exhaustion became an issue in this action and backdated them to August 17, 2011, and October 22, 2011, respectively. ECF No. 30- 35, 45.

In attempting to explain the discrepancy, Plaintiff testified that when he files appeals, he does not always have access to the law library. He therefore writes out a rough draft of his appeal on a piece of paper, which acts as his copy for when he cannot get to the law library, and then submits the appeal. ECF No. 123, at 50. So when the exhaustion issue came up after the first motion to dismiss was filed, he searched for the 602s and "found the handwritten copy." Rather than sending in the rough draft, he got the 602 forms that he had and "copied the same content of the rough draft onto the 602 so it would be on the proper form." ECF No. 123, at 51. He then postdated the forms to the dates that were on his rough drafts. ECF No. 123, at 52.

Plaintiff admitted that at no time during this action did he explain that the 602s were hand-written copies because "it never came up until now." ECF No. 123, at 54.

Plaintiff did not produce the rough drafts in discovery. ECF No. 123, at 159. He said, however, that he could go back to his cell and "dig" the rough drafts out. ECF No. 123, at 60. Plaintiff was given an opportunity to find the rough drafts, as noted above, but could not do so.

For a number of reasons, Plaintiff's testimony is simply not credible. The most glaring inconsistency is the fact that Plaintiff claims to have created and backdated the 602 forms to match the rough drafts of the actual 602s he allegedly submitted. He never explained this until Defendants confronted him at the hearing with the fact that he could not have written a 2011 appeal on a 2012

7

1  form.  Plaintiff offered an explanation and suggested that he could find the copies of the rough drafts.
2  Not surprisingly, Plaintiff was unable to find the rough drafts.

3  It is too much of a coincidence that *both* appeals at issue, *and* their state claim counterparts,
4  would have gone missing, especially given Plaintiff's admission that the 602s that he submitted as
5  evidence were created once the issue of exhaustion arose in this action.

6  Plaintiff also testified that he was very familiar with the 602 process, which makes it unlikely
7  that he would have taken no action to follow up on these missing appeals until July 2012, long after
8  they were submitted.  ECF No. 123, at 20-12.  This is especially true where Plaintiff was complaining
9  that he was basically being underfed.  Indeed, Defendants produced evidence showing that Plaintiff's
10 July 2011 appeal, which also mentioned a hunger strike, was evaluated immediately in case a medical
11 emergency existed.  ECF No. 123, at 168.  Had Plaintiff submitted an appeal in August and October
12 2011 related to hunger strikes and the withholding of food, he knew from prior experience that it
13 would have been processed within days.  ECF No. 123, at 143.

14 Defendant also produced evidence that mail was not collected on Saturdays and Sundays.  ECF
15 No. 123, at 82.  October 22, 2011, was a Saturday.

16 Based on this evidence, the Court finds that Defendants have shown, by a preponderance of the
17 evidence, that Plaintiff did not file grievances on August 17, 2011, and October 22, 2011.  This
18 renders Plaintiff's claims related to events occurring after July 11, 2011, that (1) he informed Warden
19 Hubbard that medical staff refused to increase his liquid diet, and that officials were misinterpreting
20 Operating Procedure 1051; and (2) Defendant Kernan was placed on notice that prison officials were
21 withholding food, but failed to intervene, unexhausted.

22           3.    *Falsification of Documents*

23 Having determined that Plaintiff's testimony was not credible, the Court now finds that
24 Plaintiff submitted falsified documents in support of his opposition to the exhaustion challenge.  On
25 numerous occasions, both in writing and during testimony, Plaintiff represented to this Court, under
26 penalty of perjury, that he submitted the appeals he offered as evidence.

27 Defendants made a motion for terminating sanctions based on these documents at the hearing.
28 The Court could not rule on the motion at that time, however, not having made the threshold

determination of whether Plaintiff's testimony was credible.  The Court took the matter under advisement.  ECF No. 123, at 74.

If Defendants wish to pursue the motion for terminating sanctions, they should re-notice the motion to ensure that Plaintiff has an opportunity to be heard on the matter.

2. State Law Claims

a. *Prior Findings*

There is no dispute that Plaintiff did not receive a denial from the California Victim Compensation and Government Claims Board ("Board") on any state law claims remaining in this action.

The Court found a dispute of fact as to whether Plaintiff filed two claims on January 1, 2012. The first, according to Plaintiff, was placed in a sealed envelope and given to prison officials for mailing to the Board on January 1, 2012.  The claim alleged that Defendant Kernan was told about the denial of food, and rather than intervening, he issued a memorandum on September 27, 2011, that threatened disciplinary measures for participation in a hunger strike.  The claim was signed by Plaintiff on January 1, 2012.

Plaintiff alleges that the second claim, also signed by him on January 1, 2012, alleged that between August 1, 2011, and October 15, 2011, Corcoran staff discontinued and/or failed to increase his liquid diet and discharged him back to his cell, where his food continued to be withheld pursuant to a misinterpretation of Operating Procedure 1051.  Plaintiff gave this claim to prison staff to mail on January 1, 2012.

b. *Findings After Evidentiary Hearing*

Plaintiff did not add many facts to his contention that he submitted two claims addressed to the Board for mailing on January 1, 2012.  He did add, however, that he did not enclose the $25 fee as required by the form, and he could not remember if he submitted a fee waiver.  ECF No. 123, at 36-37.

Defendants offered testimony to show that if Plaintiff had submitted the claims for mailing, they would have been entered on the log for outgoing legal mail.  The system is very accurate.  ECF No. 123, at 171-172.  There is no record of Plaintiff's two claims submitted to the Board on or about January 1, 2012.  ECF No. 123, at 173-174.

This testimony, combined with Plaintiff's reliance on falsified documents as noted above, is sufficient to carry Defendants' burden of showing that it is more likely than not that Plaintiff did not submit the two claims to the Board on January 1, 2012. Again, it is untenable that both the inmate appeals *and* the state law claims for the same issues would have gone missing. This renders the remaining state law claims unexhausted.

### F.  RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that (1) Plaintiff's federal claims related to events occurring after July 11, 2011, that (a) he informed Warden Hubbard that medical staff refused to increase his liquid diet, and that officials were misinterpreting Operating Procedure 1051; and (b) Defendant Kernan was placed on notice that prison officials were withholding food, but failed to intervene, unexhausted; and (2) the remaining state law claims be DISMISSED WITHOUT PREJUDICE for Plaintiff's failure to exhaust his administrative remedies.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with this Findings and Recommendation, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 11, 2016**          /s/ *Dennis L. Beck*
                                    UNITED STATES MAGISTRATE JUDGE